[Decided June 27, 1893.]

## COMMERCIAL NATIONAL BANK *v.* CITY OF PORTLAND.

[ S. C. 33 Pac. Rep. 532. ]

MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — CONTRACT FOR PAYMENT FROM PARTICULAR FUND — DAMAGES FOR NEGLIGENCE IN NOT COLLECTING FUND.—A city which makes a contract for a street improvement, containing a stipulation that the contractor will look for pay only to a special fund to be collected and paid into the city treasury for that purpose, and that "he will not compel the city by legal process or otherwise

to pay for the improvement out of any other fund," is guilty of such neglect and unreasonable delay as to render it liable in an action for damages at the hands of the holders of warrants issued in payment for such improvements, where it has failed for five years to press to trial an injunction suit restraining the collection of the assessment necessary to make such payment.

Multnomah County: E. D. SHATTUCK, Judge.

This is an action brought by the Commercial National Bank of Portland against the City of Portland for damages because of the non-payment of certain warrants issued by the defendant city upon a special fund to be raised by the levy and collection of assessments upon the real property affected by the improvement of Twelfth Street, in the City of Portland, from the south line of B Street to the north line of Montgomery Street. The complaint sets out in full the ordinance of the defendant, providing for the time and manner of improving the street named, and also the contract under which the work was performed. It is shown that this contract was awarded to P. H. Schulderman & Co., on the eighteenth day of August, 1887. The contract contained a stipulation that upon the completion of the improvement according to its terms, and on the approval and acceptance of the same, the contracting firm would be entitled to certain specified sums of money for the various kinds of work done, and should be paid "by warrants to be drawn upon the fund to be collected and paid into the city treasury for that purpose." The contract contained the further stipulation that "it is expressly agreed, and this contract is made upon condition, that the parties of the first part [meaning the contractors] shall look for payment for said labor and material only to the aforesaid fund to be assessed upon the property liable to pay the said improvement, and collected and paid into the city treasury for that purpose, and that the said parties of the first part will not require the City of Portland, by any legal process or otherwise, to pay for the same out of any

other fund." The contract was properly executed, and the work thereunder was completed within the time therein limited and was duly accepted by the city. In the months of October and November, 1887, city warrants were duly issued to the contractors, and some of them, aggregating twenty-two hundred and two dollars and thirty-four cents were duly assigned to plaintiff. These warrants were drawn on the said fund for the improvement of Twelfth Street. The complaint further alleges that all the warrants enumerated therein were, prior to the bringing of this action, endorsed in blank by said P. H. Schulderman & Co., and assigned and transferred for value to the plaintiff, and that the plaintiff is now the owner and holder of all said warrants; that demand was made upon the city treasurer for the payment thereof, which was refused, and that there is now due and payable from the defendant to the plaintiff the full sum mentioned in said warrants, with interest at the legal rate from the date of issue. A demurrer to the amended complaint was filed, and, after argument, was overruled. Thereupon the defendant filed an answer in the nature of a plea in abatement, averring that certain property holders on the line of said improvement had begun a suit to restrain the collection of said assessment for the improvement of Twelfth Street, upon various grounds. The city filed its answer to that suit, denying all the material allegations of the complaint, and pleading new matter by way of defense. On February 18, 1888, a temporary restraining order was issued as prayed for, which order is still in force, and it is now claimed by the city that by reason thereof it has been unable to collect the assessments necessary to meet the warrants of plaintiff. The plaintiff demurred to the plea in abatement, which was sustained, and judgment rendered in favor of the plaintiff for the full amount claimed, from which judgment an appeal is taken to this court. Affirmed.

*William T. Muir*, city attorney, for Appellant.

An agreement explicitly stating that a contractor shall look for payment "only" to a special fund, and that he "will not compel the city, by legal process or otherwise, to pay for the improvement out of any other fund," certainly should be held to mean something. We rely on the condition of the contract. The rights of the parties are fixed and determined by their own deliberate act. The court is construing an agreement and not dealing with any doctrine of implied liability. Where there exists a contractual relation, as in the case at bar, we are not aware of any legal principle justifying an abandonment of the contract deliberately made, and authorizing a general action for damages. The contractor, by his own act, circumscribed his right to recover. He cannot now forsake his express agreement and call upon the court to imply a broader, and, to him, better one. The position above outlined would seem to be sanctioned by the principles of law governing the construction and interpretation of contracts, and municipal powers and obligations, and is in accord with the decided cases: *Frush* v. *City of East Portland*, 6 Or. 281, 283; *Lake et al.* v. *Trustees*, 4 Denio, 520; *Pettis Co.* v. *Kingsbury*, 17 Mo. 479; *Board of Commissioners* v. *Mason*, 9 Ind. 97; 1 Dillon, Municipal Corporations (3d Ed.), § 413; *Campbell* v. *Polk Co.* 49 Mo. 214; *Boro* v. *Phillips Co.* 4 Dillon, 216, 223; *State ex rel. Zimmerman* v. *The Justices, etc.* 48 Mo. 475; 1 Daniel, Negotiable Instruments, § 433; *Baker* v. *Seattle*, 2 Wash. St. 576 (27 Pac. Rep. 462); *Trustees of Belleview* v. *Hohn, etc.* 82 Ky. 1; *Travelers Insurance Co.* v. *Denver*, 11 Col. 434, 438, 440; *Fuller* v. *Heath*, 89 Ill. 296; *Peake* v. *New Orleans*, 38 Fed. Rep. 779, 782.

The plaintiff seems to place reliance on the two Oregon cases of *N. Pac. Lumber Co.* v. *East Portland*, 14 Or. 1, and *Portland Lumber Co.* v. *East Portland*, 18 Or. 21, but the essential feature of the designation of a particular fund out of which the cost of the improvement only was to be

made, was absent in both of those cases, and its presence here makes a totally different case. The distinction between orders made payable out of a particular fund, and those which are issued as an evidence of general corporate liability, is well defined in the law.

In the absence of fraud or dishonest intent, no responsibility would result from any failure to collect the money necessary. Nothing is due under the contract or warrants until the assessments are collected. The only proceeding furnished by the law is one to compel the levying and collection of a tax to pay a liquidated claim. Mandamus is the proper remedy: 1 Hill's Code, §§ 592, 593; *Commonwealth ex rel.* v. *Pittsburgh*, 34 Pa. St. 496; *Commonwealth ex rel.* v. *Commissioners*, 37 Pa. St. 277; *Chapin* v. *Osburn et al.* 29 Ind. 99; *State ex rel.* v. *City of Keokuk*, 9 Iowa, 438; *Wilson* v. *Berkstresser et al.* 45 Mo. 283; *State ex rel.* v. *Justices*, 48 Mo. 475; *Whalen* v. *La Crosse*, 16 Wis. 288; *People* v. *Shearer*, 30 Cal. 645; High's Ex. Leg. Rem. § 139; *Hyatt* v. *Allen*, 54 Cal. 353; *Commissioners of Columbia Co.* v. *King*, 13 Fla. 451; *People* v. *Mead*, 36 N. Y. 224.

*Geo. H. Durham* (*Harrison G. Platt* on the brief), for Respondent.

MR. CHIEF JUSTICE LORD delivered the opinion of the court:

The plaintiff claims that it was and is the duty of the defendant city to collect from the various owners of property abutting upon said Twelfth Street the several sums ascertained by the defendant to be the cost of making said improvement, and the charges specifically made against the various parcels of land affected by and liable for said improvement; that the defendant has wholly failed and neglected to perform this duty, and has not collected from the property holders the money with which to pay the warrants described, and is making no effort so to do;

that by reason of the alleged neglect of duty by the defendant, plaintiff claims to be damaged in the amount of said warrants and the interest thereon. The principal question then is whether the city is liable for the payment of the warrants in question, in view of the stipulation requiring the contractor to look to a special fund for payment, and undertaking to exempt the city from general liability. The facts show that the contract under which the work was done was made on the eighteenth day of August, 1887, and that the improvement provided for therein was completed prior to the sixteenth day of November, 1887, in accordance with the terms of such contract, and was thereupon accepted by the city, and warrants, made payable out of the fund for such improvement, were issued to the contractors, among which were the warrants assigned to the plaintiff. As several years have intervened since the issuance of such warrants, and the city has failed and neglected to raise the special fund to pay them, the plaintiff has brought an action against the defendant for negligence, claiming that he is damaged in the amount of the warrants in question, and interest due thereon, and that the city is liable therefor. To defeat such action the defendant relies upon the stipulation in the contract, claiming that it limits the liability of the city to the special fund to be raised by assessments upon the property affected by the improvement, and confines the contractor's right of recovery to such fund. The stipulation provides that the contractor shall look for payment to the special fund, and that "He will not compel the city, by legal process or otherwise, to pay for the improvement out of any other fund;" and the defendant contends, if any force or effect is to be given to such stipulation, that it is liable to pay the warrants in question only when such special fund is raised and collected, and consequently that the defendant is not liable generally in an action for damages upon them. This view would relieve the city of any lia-

bility to pay such warrants until such special fund is raised and collected by assessments, although its failure to realize such fund may be due to its own neglect or unreasonable delay.

Under its charter the city is invested with the power to order local improvements, and afforded the means to raise the necessary funds to pay for them by assessments upon the property benefited thereby. When the city orders a local improvement, the duty devolves upon it to put the necessary machinery in motion to raise the funds to pay for it by assessments upon the property affected. This duty devolved upon the city when it ordered the improvement of Twelfth Street, so that when the defendant entered into a contract for doing the work, and the contractor stipulated to look for payment to the special fund to be raised by assessments, the obligation rested upon the city to prosecute in good faith, and with reasonable diligence, the means afforded to it, under its charter, to raise and collect the fund necessary to redeem its obligation. There is no pretense but that the obligation resting upon the contractor to perform the work, and furnish the materials required, has been satisfactorily performed, and the improvement accepted. Having performed his obligation the duty rested upon the city to discharge its obligation. "When the contractor," says RUGER, C. J., "had performed his work according to his contract, he had no duty remaining to discharge, and then had a right to rely upon the implied obligation of the city to use with due diligence its own agencies in procuring the means to satisfy his claims. It could not have been supposed that he was not only to earn his compensation, but also to set in motion and keep in operation the several agencies of the city government, over which he had no control, to place in the hands of the city the funds necessary to enable it to pay its obligation. That was a power lodged in the hands of the city, and the clear intent of the contract

was that it should exercise it diligently for the purpose of raising the funds necessary to pay for the improvement; for an omission to do so it would become liable to pay such damages as the contractor might suffer by reason of its neglect of duty": *Reilly* v. *City of Albany*, 112 N. Y. 42 (19 N. E. 508). This doctrine, we think, is applicable to the case at bar. There is nothing in the stipulation of the contract absolving the city from the duty of making the assessment and enforcing its collection, hence the obligation rests upon it to make the necessary assessments, collect the same, and pay the contractor. The contractor can exert no control over its acts, nor has he any claim or lien against the property benefited by the improvement. There is no privity between the property owners on the line of the work and the contractor. The city alone can make the assessments and enforce their payment, so as to realize a fund out of which to pay the warrants in question; and it is the failure of the city to perform its duty in this regard upon which the general liability is predicated.

In *North Pacific Lumber Co.* v. *East Portland*, 14 Or. 6 (12 Pac. Rep. 4), THAYER, J., says: "The improvement is supposed to be a benefit to the lot owners referred to, and the lots affected are charged with the cost of making it. The city occupies the relation in the proceeding more of an agent than a principal. It does not undertake to pay the contract price for making the improvement out of the general funds of the city. I do not think it has any power to enter into such an agreement for the improvement of the city, but it does undertake to perform all the acts required by the charter intended to supply the requisite fund to defray the expenses attending it, and a failure to comply with any of the requirements of the charter by which the funds may be realized would subject it to a general liability." The distinction which is sought to be made between that case and the case at bar is not tenable. The stipulation of the contractor to look to a

special fund did not absolve the city from the duty of putting the necessary machinery in motion to raise and collect such fund to redeem its obligation and to pay the warrants in question. When the contractor performed his contract, the duty rested upon the city to make an active effort to discharge its obligation. Has it done it? The record discloses that the work was completed and accepted by the city in 1887. The plea of abatement which was overruled by the court shows that in February, 1888, a temporary injunction was obtained against the city. For five years the injunction suit has been permitted to lie. For more than five years the city has had the use of the improvement, and there is nothing to indicate that it has made any effort to press the injunction suit to trial. The present action has been pending since May, 1891, which includes a period sufficiently long to have prosecuted the injunction suit to a final determination, and yet the record shows, and the argument concedes, that nothing has been done in the premises. In view of these facts, has there been such unreasonable delay as would charge the city with liability for neglect of duty? It has been repeatedly held, that it is presently liable, if the failure of the city to raise the fund and pay over the same to the contractor is due to its own neglect or unreasonable delay.

In *Cummings* v. *The Mayor*, 11 Paige, 596, it was held that it was the duty of the officers of the corporation to see that a proper assessment for the improvement was made, and that the money was collected thereon, and paid over to the contractor within a reasonable time after the completion of the improvement; and that, as the officers of the corporation had unreasonably neglected to compel a proper assessment to be made, the complainants were entitled to payment out of the general fund of the corporation. This case was approved and followed in *Baldwin* v. *City of Oswego*, 1 Abb. Dec. 62, in which the defendant

was held liable " on account of the neglect of its officers to enforce the legal instrumentalities provided for enforcing payment against the parties primarily chargeable with such payment." Nor is there anything in the cases of *McCullough* v. *Mayor*, 23 Wend. 458, and *Lake* v. *Trustees*, 4 Denio, 520, cited and relied upon by the appellant's counsel in conflict with this contention. In the former of these cases, BRONSON, J., said: " If the common council has neglected that duty (that is, of putting the necessary machinery in motion), or has been wanting in diligence, an action on the case would perhaps lie," etc. In the latter, which was an action on a warrant drawn by the trustees of the village upon the treasurer, the same judge remarked that the question whether the plaintiff had a remedy on the case against the trustees for neglect of duty did not arise on the bill of exceptions. In *Buck* v. *City of Lockport*, 6 Lansing, 251, JOHNSON, J., said: " The corporation cannot thus (that is, by neglecting to act) keep its creditors at bay, and then defend itself on the ground that its own officers and agents have not done what it is their duty to do." In *Richardson* v. *City of Brooklyn*, 34 Barb. 569, and *Hunt* v. *City of Utica*, 18 N. Y. 442, no negligence was shown, but the principle is recognized that for the negligence or unreasonable delay of the city to perform its duty, it is liable. In the first of these cases the court says: " This shows a case of due diligence on the part of the council in attempting to fulfil the duty enjoined upon them by the charter. If they had unreasonably neglected or refused to make the assessment, or to take the necessary steps for the collection of the tax, or refused to pay over the money when collected, an action on the case might be sustained against them."

The theory is that when the municipality passes an ordinance for a local improvement, it is its duty to prosecute with diligence the means afforded to it under its charter to realize the fund to pay for such improvement

out of the property benefited. When, therefore, a city orders a local improvement, and enters into a contract for doing the work, containing a stipulation that the contractor will look for payment to the fund so realized, such stipulation does not absolve the city from the performance of its duty to put and keep in motion the machinery to obtain such fund, but the contract is based on the obligation of the city to perform its duty, in consideration of which the contractor stipulates to look for payment to the fund realized from its performance. So that if a city fails to perform its duty, or owing to its neglect or unreasonable delay fails to obtain such fund, it is guilty of a breach of duty and is liable. The plaintiff's action rests upon this theory. We think the record discloses a case against the city of want of diligence and neglect in the performance of its duty; and, therefore, there was no error, and the judgment must be AFFIRMED.

---

[Decided June 29, 1893; rehearing denied July 29, 1893.]