Argued October 20, reversed December 7, 1920, former opinion sustained on rehearing July 30, petition for further consideration denied September 27, 1921.

## MONTAGUE-O'REILLY v. TOWN OF MILWAUKIE.

(193 Pac. 824; 199 Pac. 605.)

**Appeal and Error — Exceptions not Necessary to Present Question Whether Facts Support Conclusions.**

1. Where the question before the Supreme Court is whether the conclusions of law and the judgment are proper deductions from the facts found by the trial court, a bill of exceptions is not necessary, in view of Section 172, Or. L.

**Municipal Corporations—Procedure, Calling for Payment by Assessments Only, Could not be Departed from.**

2. Having embarked on a street improvement proceeding under the authority of an ordinance prescribing that payment for the

work should be derived only from assessments on adjacent property, the town could not ignore the ordinance, or depart from it except by another ordinance.

**Municipal Corporations—Assessment Void Where Town Required Bidders to Furnish Their Own Specifications.**

3. Where the town of Milwaukie proceeded by ordinance under its charter (Sections 47–53) to improve a street by grading and paving, payment to be derived only from assessments on the adjacent property, but ultimately abandoned its established plans and specifications on which bids had been invited, and required each bidder to furnish his own specifications, so that the only competition between bidders was that of price, and there was no direct competition on the basis of fixed specifications as contemplated by law, the proceeding became void, and the contract made with the lowest bidder did not give rise to a cause of action in its favor.

### ON REHEARING.

**Municipal Corporations—City is not Liable for Failure to Make Valid Assessment to Pay for Special Improvement, Where Contractor has No Valid Contract for the Improvement.**

4. Where a contract for street improvement provided, pursuant to the city charter, that payment for the improvement was to be from a special fund to be raised by assessment on the abutting property, and that the city should not be required to pay from any other fund, except in case the city failed to make a valid assessment, the city was not liable thereunder for failure to make a valid assessment to pay for the improvement, where the contract itself was void *ab initio*, because not let to the lowest bidder as required by the charter.

From Clackamas: JAMES U. CAMPBELL, Judge.

Department 1.

This is an action to recover damages from the defendant municipality for its failure to provide a fund to meet the contract price of some paving laid within its corporate limits by the plaintiff. By consent of the parties and of the court the action was tried without a jury. The court made findings of fact and conclusions of law, and rendered a judgment in favor of the plaintiff for the amount claimed. Some errors are assigned in a bill of exceptions, based upon the

---

4. Implied liability of municipality under contract let contrary to statute requiring competitive bidding, see note in **Ann. Cas.** 1917A, 1263.

refusal of the court to strike out some of the findings of fact and to make others requested by the defendant, but these errors were not relied upon at the argument, and it is unnecessary to consider them. The defendant appealed.    Reversed.

For appellant there was a brief over the name of *Messrs. Huston & Meacham,* with an oral argument by *Mr. S. B. Huston.*

For respondent there was a brief over the names of *Mr. H. M. Esterly* and *Mr. John McCourt,* with an oral argument by *Mr. Esterly.*

BURNETT, J.—1. In this condition of the record the question before us is whether or not the conclusions of law and the judgment are proper deductions from the facts found by the court. In such circumstances a bill of exceptions is not necessary, for it is said in Section 172, Or. L., that:

"No exception need be taken or allowed to any decision upon a matter of law, when the same is entered in the journal, or made wholly upon matters in writing and on file in the court."

Milwaukie is a municipal corporation. By its charter its council "has full power and authority to determine and provide for everything necessary or convenient to the exercise of the authority herein granted; to grade, pave, plank or otherwise improve and keep in order highways, streets and alleys." Subsequent sections of the charter, as amended in its most recent form, empower the council to order any specific improvement on petition of one or more owners of property abutting upon a street, and to levy and collect an assessment from such realty to defray

the whole or any portion of the costs and expenses: Section 47. Under Section 48, if the council deems it necessary or expedient to improve a street by reason of the petition mentioned, it shall require the city engineer to formulate plans and specifications for the improvement, together with the estimates of the work to be done and the probable cost thereof, all of which shall be filed with the recorder. If these are satisfactory to the council, it shall approve the same, and by resolution declare its purpose of making the improvement, which resolution by Section 49 is required to be posted in certain parts of the city. Section 50 provides for a remonstrance against the improvement by the owners of three fourths of the property in area abutting upon the street. In that section also we find that if there is no objection or remonstrance, or the one filed is insufficient, the council shall be deemed to have acquired jurisdiction to make the improvement, and may thereafter, within three months from the posting of the notice mentioned, by ordinance provide for making the improvement, which shall conform in all particulars to the plans and specifications previously adopted. In Section 52 we learn that upon the taking effect of the ordinance the recorder shall give notice as directed by the council, inviting proposals for making the improvement. It is also there stated that—

"Such contract or contracts shall be let to the lowest responsible bidder for either the whole of said improvement or such part thereof as will not materially conflict with the completion of the remainder thereof, but the council shall have the right to reject any and all proposals received."

Provision is made in Section 53 for a certificate by the engineer of the completion of the work to his ap-

proval and for giving notice of the completion and of the time when the council will consider its acceptance, so that any owner of property within the assessment district may object to the approval. Afterwards, the objection, if any, having been disposed of, the council may levy an assessment upon the abutting property for the purpose of raising funds to pay the contract price, and provision is made for enforcing the liens by sale of the property and foreclosure of the liens upon the property not sold. Section 80 reads thus:

"Neither Milwaukie nor any officer thereof shall be liable for any portion of the cost or expense of any street work or improvement, which is assessed upon the property benefited thereby, by reason of the inability of Milwaukie to collect the assessment levied for the payment of such improvement, but the contractors doing such work shall be required to rely solely upon the fund accruing from the property benefited, assessed and liable therefor; and the said contractors shall not require nor compel Milwaukie by any legal process or otherwise to pay the same out of any fund, except in cases where for any reason such assessment shall be invalid."

The findings of fact recite the presentation of a petition to the council to improve Front Street in Milwaukie throughout its entire course through the town—

"by grading the street to the established subgrade; by constructing concrete curbs where the fill does not exceed two feet in depth; by constructing wooden sidewalks five feet in width on that portion of the street south of Washington Street except on the west side of the street between the point where said street leaves the track of the O. W. P. Railway, near Madison Street; by constructing concrete sidewalks six feet wide on that portion of the street north of Washington Street except where the fill exceeds two

feet in depth, in which case the sidewalks are to be constructed of wood; by constructing inlets, catch-basins, drains, headers and other incidentals to a proper improvement; by paving the street fifty feet wide between curbs on that portion north of the point where said street leaves the track of the O. W. P. Railway near Madison Street, except on that portion where the fill exceeds two feet in depth, in which case macadam is to be used; by paving the street thirty feet in width south of the point where said street leaves the track of the O. W. P. Railway near Madison Street, said thirty feet being the west half of street, except on that portion of the street where the fill exceeds two feet in depth, in which case macadam is to be used; said pavement, except where macadam is mentioned, to be hard surface not to exceed one dollar and twenty-five cents per square yard, exclusive of grading, curbs, catch-basins," etc.

We ascertain from the findings of fact that the city engineer filed plans and specifications providing for and describing four different and distinct kinds of pavement: (1) Roxol bituminous pavement on a macadam base; (2) concrete pavement; (3) asphaltic concrete pavement; and (4) macadam pavement.

The council adopted a resolution of its intention to improve the street according to the prayer of the petition, and in due time passed Ordinance No. 87, entitled: "An ordinance to provide for the improvement of Front Street in Milwaukie, Oregon, from the town limits on the north boundary to the town limits on the south boundary, in said town." The ordinance provided that:

"Front Street shall be improved in conformity with the plans and specifications heretofore filed with the recorder, and which were adopted by resolution of the town council on the thirteenth day of May, 1913."

Requirements were provided for the form of the bids, the ratio of payment as work progressed, bonds to be given by the contractor, and, in Section 7, it was enacted that:

"Each contract shall contain a stipulation to the effect that the person, firm or corporation to whom the contract is let shall look for the payment only to the sum assessed upon the property liable to pay for such improvement, and collected and paid into the town treasury, for that purpose, and they will not require Milwaukie, by any legal process or otherwise, to pay the said sum out of any other fund."

On June 14th, pursuant to instructions from the council, the recorder of Milwaukie published a notice to contractors, informing them that proposals would be received for paving Front Street until June 24, 1913, when they would be publicly opened and read. It was stated, in substance, that no proposals would be accepted unless accompanied by a certified check equal to 5 per cent of the amount of the bid; that plans could be seen and specifications and form of proposal obtained from the recorder; and that the right was reserved to reject any and all bids. A bid was received for Roxol bituminous pavement on a macadam base, but this was rejected on June 24th. On that same date the council directed the recorder to re-advertise the invitation for ten days, according to plans and specifications, except that said advertisement should request bidders to furnish their own specifications with their respective proposals, for any kind of hard surface pavement which they proposed to lay, the same not to exceed $1.25 per square yard. This was afterwards modified, in that the invitation should be published for five, instead of ten days. In pursuance of that instruction the recorder published a notice

substantially in the same terms as the first advertisement, except that the latest notice contained this provision:

"Contractors will furnish specifications for hardsurface paving only, and at a cost not to exceed $1.25 per square yard."

It appears from the findings that at the time specified in the last notice there were several bids for improving the street: one for Roxol bituminous pavement on a macadam base, at $1.20 per square yard; another for concrete pavement at $1.25 per square yard; and the plaintiff itself submitted three bids: (1) for bituminous pavement on a macadam base at $1.10 per square yard; (2) for El Oso asphaltic concrete pavement on crushed rock base at $1.18 per square yard; and (3) El Oso asphaltic concrete pavement on cement concrete base at $1.25 per square yard. Each of the bids of the plaintiff was less than the proposals of the other two parties as computed on the total pavement. Based solely on the proceedings heretofore mentioned, the council entered into a contract with the plaintiff on July 18, 1913, to pave the street in accordance with its proposal attached to and made part of the contract. Various terms and conditions regarding the prosecution of the work were included in the contract. Section 24 of that agreement is in these terms:

"That the payment by the party of the first part for the performance of this contract shall be made from a special fund created for that purpose pursuant to terms and provisions of the charter of said town pertaining to the construction of street improvements and for the assessment of the cost thereof against the real property benefited and for the collection of said fund, but that the party of the first part

shall not nor shall any of the officers be required to pay any of said sums from any other fund than the special fund so raised for such improvement, except in the event that if for any reason said party of the first part shall fail, neglect or refuse to make or levy a valid assessment against said real property, or any part thereof, abutting upon the part of said street to be so improved or benefited by said improvement."

The findings recite that after the execution of the contract, as the plaintiff proceeded with the work, and from time to time, changes were made in the paving, under the direction of the city engineer, the principal ones of which were substituting pavement for macadam where the plans and specifications called for the latter surface. On May 28, 1914, the council passed ordinance No. 111, declaring the total cost of the improvement to be $47,560.22, and an assessment was declared and levied for that amount. Certain defects in the assessment are pointed out by the findings, and it is said that the council has never passed any further ordinance or taken any further action to collect the assessment. The findings also state the aggregate amount of payments made to the plaintiff by the defendant and the issuance of certain warrants, all of which have been paid except three, totaling $8,091.14.

2. The crux of the contention is found in the clause of the notice inviting bids whereby the contractors were required to furnish their own specifications for hard surface paving only, and at a cost not to exceed $1.25 per square yard. It may be conceded, without deciding, that the town had a right to make an improvement on any of its streets under its general power over such highways, and pay for the same out of the general fund, and that another form of

power existed, based upon the petition of abutting
property owners.   It is clear that the proceedings in
question here were taken under the second authority;
that is, upon the petition of abutting property hold-
ers.   That the contract was made with reference to
this procedure is shown by section 24 thereof, already
quoted.   The plaintiff accepted the Bancroft Act
bonds in part payment of the contract price, and
these could be issued only on an improvement made
at the expense of particular property: Section 3788,
Or. L.   The ordinance under which the contract was
let prescribed that the payment should be derived
only from assessments on the adjacent property.
The proposal by the plaintiff, made part of the con-
tract, recites that it is in pursuance of this Ordinance
No. 87, so that it stands out in bold relief that the
council was proceeding under the petition of the local
abutters, and not in pursuance of its general author-
ity over the streets, and that the plaintiff operated
on the same basis.   Having embarked upon this pro-
cedure under authority of its ordinance, the town
could not ignore the same or depart from it, except
by another ordinance: *Hibbard* v. *Chicago,* 173 Ill. 91
(50 N. E. 256, 40 L. R. A. 621).   To the same effect
is *Pontiac* v. *Talbot Paving Co.,* 94 Fed. 65 (36
C. C. A. 88, 48 L. R. A. 326).   As said by the Su-
preme Court of Washington in *Stephens* v. *Spokane,*
14 Wash. 298 (44 Pac. 541, 45 Pac. 31):

"The city may have had the power to provide for
the improvement at the expense either of its general
fund or at the expense of a special fund to be created
by assessment upon the property benefited, but it had
no power to mix these two methods of procedure.
When, as in this case, it sought to make the improve-
ment at the expense of the property benefited, it must

proceed as though it had no right to make it in any other way.''

See, also, *Chicago* v. *Brede,* 218 Ill. 528 (75 N. E. 1044); *Rhode Island Mortgage & Trust Co.* v. *Spokane,* 19 Wash. 616 (53 Pac. 1104); *German-American Savings Bank* v. *Spokane,* 17 Wash. 315 (49 Pac. 542, 38 L. R. A. 259). These precedents are cited to the point that when the city has embarked upon a particular scheme of betterment prescribed by its charter, it must adhere to that throughout, and cannot piece out its defects by reference to some other mode of improvement. So, we come to the conclusion that this action is for a breach of contract said to be grounded on a special system of street improvement, and that there is not involved any violation of an agreement based upon the general authority of a city to improve streets, the expense of which was to be defrayed by general taxation.

3. Having determined, then, the procedure under which the parties were operating, it remains to decide whether or not they complied with it. According to the sections of the charter set out in the findings, the council acquires jurisdiction to make the improvement by giving notice of its intention and having disposed of remonstrances against the betterment in view. Its ordinance passed to carry into effect its intention ''shall conform in all particulars to the plans and specifications previously adopted.'' This ordinance becomes the law of the case, and it is erroneous to depart from it in subsequent stages of the proceeding. Again, in Section 52 we find the mandatory language:

''Such contract or contracts shall be let to the lowest responsible bidder for either the whole of said

improvement or such part thereof as will not materially conflict with the completion of the remainder thereof.''

Under these provisions of its organic act, it was the imperative duty of the council previously to establish a standard of contract by which could be measured the question of who later was the lowest responsible bidder. In the case in hand a portion of the property holders in the municipality had voluntarily initiated a local proceeding for the improvement of the street. Moved by their petition, the council entered upon the special proceeding of improving the street at the expense of the abutting property. Its authority was thus limited, and anyone dealing with the municipality is bound to take notice of the limitations upon its power and the mode of its exercise. In other words, it is a question of dealing with an agent whose authority is known to be special and limited. Something is said in the findings to the effect that some of the pavements mentioned in the proposals are patented processes or designated by trade names, but the error is not necessarily affected by that feature. The vice of the proceeding would have been the same if no bidder had mentioned any copyrighted name or patented process of pavement. The departure from the charter requirements was made when the city abandoned its already established plans and specifications and required each bidder to furnish his own specifications. *Hannan* v. *Board of Education,* 25 Okl. 372 (107 Pac. 646, 30 L. R. A. (N. S.) 214), is a case in point, and the rule in cases where it is required that the contract shall be let to the lowest bidder and the necessity of prescribing a fixed standard in advance are

aptly stated in the note to the report in the publication last named, thus:

"There are many constitutional and statutory provisions requiring the awarding of public contracts to the lowest bidder. In order to comply with such requirement, there must, so far as the subject matter will allow, be an opportunity for competition on equal terms; and in order that all may be able to compete on equal terms, there must be established in advance a basis for an exact comparison of bids, so that all may bid on the same thing. Accordingly, it has been held that such provisions are not complied with unless plans and specifications are prepared in advance sufficiently definite and explicit to enable bidders to prepare their bids intelligently on a common basis."

A wealth of authority is there cited in support of the proposition. See, also, *Mazet v. Pittsburg,* 137 Pa. St. 548 (20 Atl. 693); *Anderson v. Fuller,* 51 Fla. 380 (41 South. 684, 120 Am. St. Rep. 170, 6 L. R. A. (N. S.) 1026); *Missoula St. Ry. Co. v. Missoula,* 47 Mont. 85 (130 Pac. 771); *Ricketson v. Milwaukee,* 105 Wis. 591 (81 N. W. 864, 47 L. R. A. 685); *Fones Hardware Co. v. Erb,* 54 Ark. 645 (17 S. W. 7, 13 L. R. A. 353); *Ertle v. Leary,* 114 Cal. 238 (46 Pac. 1); *Huntington Co. v. Pashong,* 41 Ind. App. 69 (83 N. E. 383); *Packard v. Hayes,* 94 Md. 233 (51 Atl. 32). It is well settled, therefore, that a previously fixed standard, to which various proposals may be referred for comparison, is an essential ingredient, where the contract is to be let to the lowest bidder.

What, then, is the effect of departing from this rule? In *Terwilliger Land Co. v. Portland,* 62 Or. 101 (123 Pac. 57), Mr. Justice BEAN, delivering judgment, wrote thus:

"It is a well-settled general rule that all contracts in which the public is interested, which tend to prevent the competition required by statute, are void"— citing authorities.

In that case the prevention of competition rested in the requirement of the city that a particular kind of pavement should be laid, the right to lay it being then the exclusive property of a certain concern which had not given permission on equal terms to other parties to use the process. The principle underlying the decision was that competition was in a degree stifled or impeded. This case has been distinguished, never overruled, but rather approved in principle by such authorities as *Johns* v. *Pendleton,* 66 Or. 182 (133 Pac. 817, 134 Pac. 312, Ann. Cas. 1915B, 454, 46 L. R. A. (N. S.) 990), where it appeared that the process of paving, although patented or copyrighted, was nevertheless placed at the disposal of all bidders on equal terms, thus giving each of them an even start in the contest. In the instant case, under the call for bids embodied in the second published notice, each would-be contractor pursued his own course without conflict with others. There was no competition. Although the computed prices differed in amount, yet that is not the sole element of the contract. The nature and quality of the pavement to be laid vitally affect the question, giving sanction to the rule that the terms of the contract upon which bidding will be required must be specified with reasonable certainty in advance. The question of the sufficiency as to precision of the plans and specifications is not here involved. It is an instance of the total absence of authoritative plans and specifications. Neither is it of any avail, as expressed in the findings, that the pavement actually laid complied substantially with one

class of specifications filed by the city engineer. The reason of this is that by requiring each bidder to furnish his own plans and specifications the originals were abandoned. And it may be that, if the call for bids had particularly specified the requirements, some other bidder than the plaintiff might have bid lower. Since competition was suppressed by the abandonment of the plans and specifications prescribed by the ordinance, and the city improperly delegated to the prospective bidders its imperative duty of prescribing a plan and specifications, the proceeding is void under the doctrine of *Terwilliger Land Co.* v. *Portland,* 62 Or. 101 (123 Pac. 57). Being thus void, the contract does not furnish any control over the actions of the parties the breach of which would result in damages. Hence we conclude that, whatever might inure to the plaintiff by future legislative or other action of Milwaukie, yet no recovery can be had for a breach of the so-called contract here involved.

The judgment of the Circuit Court was not the legitimate conclusion from the findings of fact, and hence it must be reversed.    REVERSED.

McBRIDE, C. J., and HARRIS and JOHNS, JJ., concur.

ON REHEARING.

(199 Pac. 605.)

FORMER OPINION SUSTAINED.

In Banc.

This is an action by the plaintiff as a contractor against the defendant, a municipal corporation, to recover upon an alleged breach of the duty of the city to provide a fund to pay for the improvement of Front Street from its town limit on the north bound-

ary to its limit on the south, founded upon a written contract made between them on July 18, 1913, in which the plaintiff prays for judgment for $8,194.13, and interest. This case was argued in Department 1 and the opinion of that branch of the court was written by Mr. Justice Burnett, on December 7, 1920, in which the judgment of the lower court in favor of the plaintiff for the full amount of its claim was reversed and the case dismissed. A petition for a rehearing was filed and allowed and the case was argued in banc on June 10th. The facts are fully stated in the former opinion. It was there held in substance: (1) That the council was proceeding under the petition of the local abutters and not in pursuit of its general authority over the streets and that the improvement was founded upon the special proceeding; that the town having entered into the contract with the plaintiff under a procedure based upon that petition it must be followed and could not be changed. (2) Where the defendant proceeded by ordinance to improve a street, the payment for which was to be derived only from assessments on adjacent property but ultimately abandoned its original plans and specifications on which bids had been invited and required each bidder to furnish his own specifications, the subsequent proceedings by reason thereof were void and the contract made with the plaintiff as the lowest bidder would not support a cause of action against the defendant. In a very able brief on rehearing the plaintiff contends that the former opinion "is in irreconcilable conflict with the settled law in this state and with the weight of the judicial authority."

Former Opinion Sustained on Rehearing.

For appellant there was a brief over the name of *Mr. D. P. Matthews,* with oral arguments by *Mr. M. B. Meacham* and *Mr. B. G. Skulason.*

For respondent there was a brief over the name of *Messrs. Wood, Montague & Matthiessen,* with oral arguments by *Mr. H. M. Esterly* and *Mr. R. W. Montague.*

JOHNS, J.—Section 35 of the charter provides:

"The council has power, and is authorized whenever it deems it expedient, to alter or establish the grade and to improve any street, or alley, or parts thereof, now or hereafter laid out or established within the corporate limits of the town. The power and authority to improve a street or alley includes the power or authority to improve the sidewalks or pavements, and to determine and provide for everything convenient and necessary concerning such improvement."

This gives the town council general power to improve the streets in its own discretion and to make the town itself liable for the cost of such improvements. By Section 36, the "Council has the further power and authority to make the improvements named in said section at the cost and expense of the property adjacent to the said improvement." This required that the ordinance shall be read at two regular meetings and the posting of three notices thereof in public places. Section 37 says, "the Council must provide by ordinance for the establishment of the grade, for the determination of the cost of the improvement, and the share which each block, lot, or parcel of real property abutting upon or adjacent thereto shall pay." It also provides for the levying and collecting of the assessments and making them a

lien upon the real property and for its sale and re-
demption.  Section 47 provides that upon the peti-
tion of one or more property owners abutting upon
the street for any specific improvements, the council
is "empowered to order the whole or any part of the
street of the city so petitioned for to be improved
in accordance with said petition; to levy and collect
an assessment, upon all lots and parcels of land abut-
ting upon said improvement, to defray the whole or
any portion of the costs and expense thereof." When
an improvement has been thus initiated, Section 48 pro-
vides that the council shall require the city engineer
to make plans and specifications for the employment,
estimates of the work to be done and the probable
cost which should be filed with the recorder and "the
improvement of each street, or part thereof, shall be
made under separate proceeding.  If the Council
shall find such plans, specifications, and estimates to
be satisfactory, it shall approve the same," and shall
by resolution, "declare its purpose of making said
improvement."  Section 50 provides for the filing of
a remonstrance within ten days after the posting of
the notices by owners representing three fourths in
area of the property abutting upon the street.  Sec-
tion 51 enacts that if no remonstrance is filed, "the
Council shall be deemed to have acquired jurisdiction
to order the improvement to be made, * * which
shall conform in all particulars to the plans and
specifications previously adopted. * * "  Section 52
enacts that "the Council shall have power to award
the contract * * in strict accordance with the speci-
fications therefor," and that "such contract or con-
tracts shall be let to the lowest responsible bidder";
that the council shall have the right to reject all bids
and that if a satisfactory bid is not received "the

Council may proceed with the improvement by furnishing the materials, employing and placing in charge some suitable person as superintendent, and causing the work to be done, in whole or in part, by day's labor, and by having such parts of the material furnished or work done by contract as shall appear to the Council advantageous." All of such provisions follow and relate to Section 36 in and by which the council has special powers only to make street improvements. In the instant case the proceedings were initiated by a petition of the abutting property owners under the provisions of Section 36 et seq. which were followed down to and including a portion of the provisions of Section 51, when the city council rejected all bids and again advertised for bidders upon the plans and specifications then on file and in addition thereto, asked for bids for hard surface pavement and stating that the bidders for that kind of a pavement should furnsh their own plans and specifications. In response to that notice, the plaintiff prepared its own plans and specifications and submitted its bid thereon which the town finally accepted, resulting in the contract between it and the plaintiff described in the complaint.

Under the charter there are two different methods for the making of street improvements, one under Section 35, which gives general power to the council and the cost of which is a claim against the city itself, the other under Section 36 et seq. under which the council has only a special power and the cost of the improvement is a charge or lien on the property only of the abutting owners. The petition of the abutting property owners to improve and the subsequent proceedings leading up to and the making of the contract are founded upon the special powers of

the council under Section 36 et seq. as distinguished from its general powers as defined by Section 35, and in the instant case the engineer prepared the plans and specifications under the provisions of Section 48, which were afterwards approved by the council, and the improvement was ordered made under Section 51 and the notices were posted under the provisions of Section 52. The charter distinctions are important. Acting for and representing the city itself, the council might be strongly opposed to the making of a street improvement at the expense of the city and yet willing to authorize the improvement of a street upon the petition and at the expense of the abutting property owners. Here the fact remains that the proceedings were inaugurated pursuant to the special powers of the council under Section 36, as distinguished from its general powers under Section 35. Section 52 provides "such contract or contracts shall be let to the lowest responsible bidder." After calling for the original bids which were based upon the plans and specifications prepared by the city engineer and approved by the council, it rejected all bids and again advertised for bids upon the original plans of the engineer and at the same time and in the same notice called for bids for a hard surface pavement, upon plans and specifications to be prepared by the bidder and submitted with his or its bid. As a result the plaintiff was awarded the contract for a hard surface pavement on its own plans and specifications. The city now contends that the council was acting under its special powers; that this action of the council was not authorized under proceedings for a street improvement, initiated under Section 36 et seq.; that it is in violation of the express provisions of Section

52 that such "contracts shall be let to the lowest responsible bidder" and that plaintiff's contract was void *ab initio*. If in making the contract the council was acting under its special powers as distinguished from its general powers, then it must follow under the authorities cited in the original opinion that the contract was void for the want of competitive bidding. Plaintiff now contends that because the city had also the general power to contract it is now liable to the plaintiff even though the contract was made by the council under its special powers. Among other things the complaint alleges that the "town of Milwaukie has never made or levied any valid assessment" upon the abutting property "or created or provided any special fund" to pay for said improvement and that it "has negligently and carelessly failed to comply with the requirements and provisions of its said charter essential to secure and provide said special fund; that defendant has wholly failed, neglected and refused to enforce the provisions of said charter essential to levy and collect the valid assessment upon the lots and parcels of land which abut upon said improvement"; that it has "at all times failed, neglected and refused and still and now does neglect and refuse to take further or any other action to institute or prosecute any further or other proceedings; * * that by reason and as a result of said negligence of said defendant, Town of Milwaukie, and its failure to create said special fund wherewith to pay said contract price and said warrants, as aforesaid, the plaintiff has been and is damaged in the full sum" of its claim. Counsel for appellants contend:

"This is an action for negligence. That is settled by the pleadings and by the election of the plaintiff at

the inception of the trial. Since this action is one for negligence on the part of the defendant for failing to comply with its contract, it of course follows that in order for the plaintiff to recover it must show that there was a valid contract between the plaintiff and the defendant.''

In their brief on rehearing respondent's counsel says:

''The court will remember that this is an action by the contractor, plaintiff below, against the City of Milwaukie, to recover for a' breach of the duty cast upon the city by law to provide a fund to pay for the improvement of a street, * * .''

Under the first subdivision of points and authorities, respondent says:

''When a city has general power to contract for improvements, the law raises an inescapable obligation to pay the contractor for work contracted for and properly done, which comes within that power. If it undertakes to make the improvement under the local assessment plan and fails to make a good assessment, that very failure is a wrong for which the contractor may recover from the city, *ex delicto.* Subd. 13, § 22, Milwaukie Charter, p. 51, Abstract, § 35, Milwaukie Charter, p. 51, Abstract; *North Pacific Lumber & M. Co.* v. *East Portland,* 14 Or. 3 [12 Pac. 4]; *Portland Lumber & M. Co.* v. *East Portland,* 18 Or. 21 [22 Pac. 536, 6 L. R. A. 290]; *Commercial Nat. Bank* v. *Portland,* 24 Or. 188 [33 Pac. 532, 41 Am. St. Rep. 854]; *Little* v. *City of Portland,* 26 Or. 235 [37 Pac. 911]; *Jones* v. *City of Portland,* 35 Or. 512 [58 Pac. 657]; *O'Neil* v. *City of Portland,* 59 Or. 84 [113 Pac. 655]; *Carruthers* v. *Astoria,* 72 Or. 505 [143 Pac. 899, 1106]; *Dennis* v. *Willamina,* 80 Or. 486 [157 Pac. 799]; *Morris* v. *Sheridan,* 86 Or. 224 [167 Pac. 593].''

Under point 2, a number of cases are cited from other jurisdictions in line with the Oregon decisions. Section 80 of the charter provides:

"And the said contractor shall not require nor compel Milwaukie by any legal process or otherwise to pay the same out of any fund, except in cases where for any reason such assessment shall be invalid."

The contract provides:

"But that the party of the first part shall not nor shall any of the officers be required to pay any of said sums from any other fund than the special fund so raised for such improvement, except in the event that if for any reason the party of the first part, shall fail, neglect, or refuse to make or levy a valid assessment against said real property or any part thereof abutting upon the part of said street to be so improved or benefited by said improvement."

The plaintiff bases its right to recover upon these provisions in the charter and contract and in legal effect contends that Section 80 of the town charter should be read into and made a part of Section 35. It also contends that:

"The letting of this contract strictly followed the provisions of the charter for the improvement of the streets at the abutters' expense."

The contract was either let under the general powers of the council as prescribed in Section 35 or under the special powers as defined in Section 36. If the contract "strictly followed the provisions of the charter for the improvement of the streets at the abutters' expense" as respondent contends, it was the exercise by the council of the special power conferred upon it under Section 36 and not of the general power defined in Section 35. It is admitted that the proceedings were initiated upon the petition of abutting property owners and that all of the special proceedings of the charter were complied with up to and including the point when all bids were rejected by the

council. Up to that time it cannot be claimed that the council was proceeding in or acting under its general powers. The question is thus presented as to whether after a special proceeding has been initiated under the section of the charter which confers special powers upon it, the council can then change the nature and legal effect of that proceeding and make the city itself liable under its general powers, and whether such a change was made in this case. Subsequent events conclusively show that it was never the purpose or intent of the council to change from one form of liability to another and that it was not the original intent of the plaintiff to claim or enforce a liability against the city under the general powers of the council. The contract also provides:

"That the payment by the party of the first part for the performance of this contract shall be made from a special fund created for that purpose pursuant to terms and provisions of the charter of said Town pertaining to the construction of street improvements and for the assessment of the cost thereof against the real property benefited and for the collection of said fund, but that the party of the first part shall not nor shall any of the officers be required to pay any of said sums from any other fund than the special fund so raised for such improvement, etc."

The letting of the contract was followed by a completion of the work and the city undertook to and did levy an assessment upon the property of the abutting property owners for the purpose of creating a fund to pay the plaintiff the full amount of his contract.

The contract was made on July 18, 1913. The price was $44,051.60. The complaint alleges that the defendant duly issued to the plaintiff its certain warrants drawn upon its treasurer amounting to

$43,626.60, "and that each and all of said warrants provided that the same should be paid out of a special fund known as Front Street Fund"; that from different sources including "payments voluntarily made to it by owners of said real property which abuts upon said Front Street," the plaintiff has received and applied upon its contract $35,934.51, leaving a balance of $8,190.14 with accrued interest. This action was commenced March 1, 1918. From the pleadings and the contract, the subsequent conduct of both parties and all of the surrounding facts and circumstances, it is clearly apparent that in the making of the contract, the town council was acting under its special powers and that it never intended to bind the city under its general powers and that in accepting the contract, the plaintiff was then relying upon the authority of the city to make a contract under its special powers. That is to say that both parties understood that the contract was made under the special powers of the council. The contract having been made under such special powers, it must follow that section 52 of the charter to the effect that the contract "shall be let to the lowest responsible bidder" must be read into and is a part of the contract and for such reason it is void. Plaintiff's cause of action is founded upon the failure and neglect of the city to levy and collect a sufficient assessment upon the property of abutting owners to pay the full amount of the contract in the manner provided for in Sections 52 and 80 of the charter and of that portion of the contract above quoted. Those sections apply to and are a part of the amended charter of February 13, 1911, defining the special powers of the council and the method of procedure for the improvement of a street on the

petition of the owners of abutting property.   That is
to say all of the different sections above quoted apply
to an improvement made under the special powers of
the council and should be read into and made a part
of plaintiff's contract.   In the final analysis, the
plaintiff is now seeking to enforce a liability against
the city under its general powers to contract, founded
upon the alleged failure and neglect of its council to
levy an assessment upon the property of abutting
owners under a contract which its council made under
its special powers.   The charter provides that the
contract under such special powers shall be let to the
lowest responsible bidder.   It being awarded to the
plaintiff upon its own plans and specifications and
under the special powers of the council, the contract
was void *ab initio.*   Hence this is an action to recover
from the city for its failure and neglect to levy and
collect an assessment upon property owners under a
void contract.   If the plaintiff had a contract with
the council under its general powers or a valid con-
tract under its special powers, its case would then
come within the rule of and would be sustained by
the Oregon decisions cited, upon which plaintiff re-
lies.   Those decisions were based upon contracts
which were valid in their inception but here plaintiff
has a void contract which the defendant through its
council made under its special powers and because the
defendant has failed and neglected to carry out and
enforce the void contract plaintiff contends that the
town has become and is now liable under its general
powers to contract.   In other words, that through the
failure and neglect of the defendant, a contract which
was void in its inception has become and is now a
valid contract which plaintiff can enforce.   In *Frush*

v. *City of East Portland,* 6 Or. 281, the city entered
into a contract for street improvements under its general powers and the opinion says:

"It will be observed that though the improvements
were local, there is nothing in the contract to show
that it was in the minds of the contracting parties at
the time the same was entered into that a special and
local tax was to be resorted to in order to raise the
fund from which the warrants were to be paid. * *
Had the contract contained a stipulation that the respondent was to be paid out of a fund arising from
the tax collected from the owners of the property
abutting the street to be improved, he would have no
right to look to any other fund for payment of his
warrants."

*Hawthorne* v. *East Portland,* 13 Or. 271 (10 Pac.
342), was a suit by a property owner to enjoin the
sale of certain lots for the payment of a street assessment lien and it was there held that:

"A power conferred upon a municipal corporation
to improve the streets and tax the cost thereof upon
the adjacent property is a special and limited power,
which can be exercised only by a strict observance of
every requirement of the act confirming it."

*Portland Lumbering & Mfg. Co.* v. *City of East
Portland,* 18 Or. 21 (22 Pac. 536, 6 L. R. A. 290), was
an action by the contractor against the city to recover "the agreed price and value of certain materials furnished by the plaintiff for the defendant and
used in the improvement of one of its streets by the
direction of its common council." The power of the
city to contract was not involved. *Commercial National Bank* v. *City of Portland,* 24 Or. 188 (33 Pac.
532, 41 Am. St. Rep. 854), squarely holds that where
a city makes a contract for a street improvement to

be paid for out of a special fund and the contractor agrees "he will not compel the city by legal process or otherwise to pay for the improvement out of any other fund" and where the city for five years has neglected to collect the fund, it is liable in an action for damages, but there the validity of the contract was never questioned and the action was founded upon a valid contract for the failure and neglect of the city to enforce it. On legal principle, the case of *Commercial National Bank* v. *City of Portland, supra,* was followed and approved in *Little* v. *City of Portland,* 26 Or. 235 (37 Pac. 911). In *Jones* v. *City of Portland,* 35 Or. 512 (58 Pac. 657), the court says:

"Where the expense of improving a street in a city is to be paid from a special fund to be raised by an assessment on the abutting property, the failure of the municipality to comply with any of the requirements of the charter essential to supply such fund, or any unreasonable delay in collecting the money to pay for such improvement gives the contractor a right of action *ex delicto* against the city for damages, notwithstanding a provision in the contract that he shall look for payment to such special fund only, and that he will not require the municipality to pay for the same out of any other fund." *Commercial Nat. Bank* v. *City of Portland,* 24 Or. 188 (33 Pac. 532, 41 Am. St. Rep. 854), followed. * *

"Whatever confusion there may be in the authorities elsewhere, the holding of this court is that, where the expense of improving a street in a city is to be paid from a special fund to be raised by an assessment on the abutting property, a failure of the municipality to comply with any of the requirements of the charter essential to supply such fund * * or any unreasonable delay in enforcing such provisions or collecting and paying over the money * * gives the contractor a right of action *ex delicto* against the corporation for damages."

In *O'Neil* v. *City of Portland*, 59 Or. 84 (113 Pac. 655), this court held that where the expense of improving a street is to be paid from a special fund, a failure of the city to comply with the requirements of the charter to provide such a fund gives the contractor a right of action *ex delicto* for damages and where a complaint alleges that owing to the negligence of the city in making an assessment and its failure to exercise diligence to create and provide such a fund for a period of five years, it states a cause of action. It will be noted that in every Oregon case cited, the validity of the contract was never questioned and that the city had made a valid contract.

4. With all due respect to learned counsel, this court has never held that a city is liable under its general powers for its failure and neglect to enforce a void contract which was made by its council under its special powers. For such reasons we adhere to the former opinion.

FORMER OPINION SUSTAINED ON REHEARING. PETITION FOR FURTHER CONSIDERATION DENIED.