Submitted on briefs April 13, reversed May 25, 1926.

# NEWPORT CONSTRUCTION CO. *v.* A. E. PORTER ET AL.

## (246 Pac. 211.)

**Partnership—Causes of Action Between Firms Having Common Partner must be Adjusted in Equity, as One cannot Sue Other at Law.**

1. Firm having partner common to adversary firm cannot sue latter at law, and hence causes of action between them must be adjusted in equity.

**Partnership—Right of Firm to Recover Damages from Firm Having Common Partner for Breach of Contract must be Judged as in Action at Law Between Individuals not Connected as Partners, Though Determinable in Suit in Equity.**

2. While issue in action by firm against firm having common partner to recover damages for breach of contract must be determined in suit in equity, right to recover must be judged as in action at law between individuals not connected as partners.

**Pleading—Complaint Merely Averring That Plaintiffs have Suffered Large Damages, and not Stating Amount Claimed in Prayer, is Insufficient (§ 67, par. 3, Or. L.).**

3. Under Section 67, paragraph 3, Or. L., complaint merely averring that plaintiffs "have suffered large damages," and not stating amount of damages claimed in prayer, is insufficient.

**Contracts—Contract to Perform Road-surfacing Contract, to be Obtained by Another firm, Held Void as Indefinite Contract to Enter into Indefinite Future Contract, Terms of Which were Left to Latter Firm's Discretion, There Being No Meeting of Minds.**

4. Contract to perform road-surfacing contract to be secured from state by another firm for 10 per cent less than contract price, *held* void as indefinite contract to enter into indefinite future contract, all terms of which were left to discretion of latter firm; there being no meeting of minds because of lack of existing subject matter.

**Contracts—Contract to Perform Road-surfacing contract, for Which Other Party was to Bid, Held Void as Contrary to Public Policy and Statute Requiring Contracts to be Let to Lowest Responsible Bidder (§ 4433, Or. L., as Amended by Act Feb. 26, 1921 [Laws 1921, p. 591]).**

5. Contract to perform road-surfacing contract, for which other party was to bid, at 10 per cent less than contract price *held* void

1. See 20 R. C. L. 924,
3. See 8 R. C. L. 615.
5. See 6 R. C. L. 813.

as contrary to public policy and Section 4433, Or. L., as amended by Act Feb. 26, 1921 (Laws 1921, p. 591), requiring contracts to be let to lowest responsible bidder; such conduct amounting to "chilling the bids."

**Appeal and Error—Supreme Court may Dismiss Action for Illegality of Contract Sued on, Though not Argued in Briefs.**

6. Where illegality of contract sued on as preventing competition in bidding on public works appears from complaint, Supreme Court may dismiss suit on such ground, though not argued in briefs.

---

Contracts, 13 C. J., p. 264, n. 81, p. 290, n. 9, p. 429, n. 52, 53, p. 506, n. 79, p. 507, n. 88, 89.
Damages, 17 C. J., p. 999, n. 44.
Pleading, 31 Cyc., p. 112, n. 5.

From Multnomah: George Rossman, Judge.-

In Banc.

REVERSED.

For appellants there was a brief over the name of *Messrs. Malarkey, Seabrook & Dibble.*

For respondent there was a brief over the names of *Messrs. Winter & Maguire* and *Mr. E. W. Hardy.*

BURNETT, J.—The characters in this litigation may be described as follows: The Newport Construction Company is a corporation; Porter, Conley and McLean are the three members of a partnership. In the contract upon which the plaintiff seeks to recover, the Newport Construction Company and Conley were parties of one part, and Porter and the same Conley and McLean were parties of the other part. It thus appears that Conley was a contracting party on both sides of the contract. The business of the plaintiff corporation consisted in "the power, among other things, to engage in the business of engineering construction." The firm, composed of the partners Porter, Conley and McLean, was associated "for the purpose, among other things, of mak-

ing, performing and dealing with contracts with the State of Oregon, acting through its State Highway Commission for the construction or partial construction of certain highways and parts of highways in this state." For convenience, the plaintiff and Conley, as associated together, will be called "Newport & Conley," and the defendants will be designated as "Porter & Conley."

Substantially, the complaint avers that about September 9, 1919, Porter & Conley made a contract with the state for grading the Columbia River Highway across Sherman County, after which it was agreed between Newport & Conley on the one part, and Porter & Conley on the other, that Newport & Conley, as subcontractors, would perform this grading contract for a stipulated consideration to be paid by Porter & Conley. There is no dispute between the parties about the grading contract.

The complaint then contains the following averment:

"At the same time with and as a part of the same transaction set forth in paragraph III, the defendants, acting in association as aforesaid, agreed with the plaintiff and the defendant Conley that they, the defendants, acting in association as aforesaid, would thereafter bid upon and endeavor to secure from the State a subsequent contract (hereinafter for convenience referred to as the 'surfacing contract') for surfacing the same piece of highway included within the scope of the grading contract; and the defendants, acting in association as aforesaid, on the one part, and the plaintiff and the defendant Conley, on the other part, further mutually agreed that if the defendants were so successful, then the defendant Conley and the plaintiff, as joint adventurers, and by way of and under the form of a sub-contract from the defendants, acting in association as aforesaid, to the defendant Conley and the

118 Or.—9

plaintiff, would do those things provided by the surfacing contract to be done by the contractor, in the same manner and upon the same terms as in the surfacing contract provided, and would receive therefor from the defendants, acting in association as aforesaid, the compensation receivable by the defendants from the State under the surfacing contract, except that from all sums so to become payable as compensation to the defendant Conley and the plaintiff, as joint adventurers as aforesaid, the defendants, acting in association as aforesaid, would retain, or the defendant Conley and the plaintiff, as joint adventurers, would pay to the defendants, in association as aforesaid, a sum equivalent to the premium on the surety bond given by the contractor to the State in connection with the surfacing contract, and, as well, a sum equivalent to ten per cent of the cost of all supplies, materials, equipment and explosives consumed in the performance of the surfacing contract, and that, in addition, the defendants, acting in association as aforesaid, would furnish to the plaintiff and the defendant Conley, as joint adventurers, all money and credit necessary to finance the performance of the surfacing contract. The making by the defendants of the agreement with the plaintiff and the defendant Conley set forth in this paragraph was one of the considerations for the making by the plaintiff, in association as aforesaid with the defendant Conley, of the sub-contract described in paragraph III. At the same time with and in connection with the matters set forth in this paragraph and in paragraph III, for the purpose of dealing therewith and for no other purpose, the plaintiff and the defendant Conley associated themselves together as equal joint adventurers.''

It is said further, in substance, that Porter & Conley, at a price approved by Newport & Conley, bid upon and secured from the state the surfacing contract; that Newport & Conley were then ready, able and willing to perform that part of the agree-

ment which was by them to be performed and would have done so but Porter & Conley refused to allow them to have anything to do with the performance of the surfacing contract. After mentioning some subsequent changes of a minor nature in the so-called surfacing contract, the complaint contains this allegation:

"Out of the performance by them of the surfacing contract, either as it was originally written or as it was later amended, upon the terms and in the manner contemplated in that part of the agreement which is set forth in paragraph IV, the plaintiff and the defendant Conley, as joint adventurers as aforesaid, would have made large profits, and by the loss of these profits, and otherwise by reason of the matters and things herein set forth, the plaintiff and the defendant Conley, as joint adventurers as aforesaid, have suffered large damages."

Conley declined to join in the suit as a plaintiff and consequently was made a defendant in the complaint filed by the Newport Construction Company. The prayer of the complaint reads thus:

"Wherefore, the plaintiff prays that a determination be had of the damages suffered by the plaintiff and the defendant Conley, as joint adventurers as aforesaid, and that the defendants be required to make payment thereof in money to the plaintiff, and for such other and further relief as may be appropriate."

Some issues were tendered by the answer and affirmative defenses were averred and a reply filed admitting some things and denying others of the new matter in the answer. The Circuit Court rendered a decree in favor of the plaintiff and the defendants have appealed.

1, 2. The sole question presented is the sufficiency of the complaint as against the objection that it fails

to state facts sufficient to constitute a cause of suit. Because a man cannot sue himself, a firm which has a partner common to an adversary firm cannot maintain an action at law against that firm. Hence the rule that the adjustment of causes of action existing between two firms having a common partner must be worked out in equity. In the present contention the cause of action is of cognizance at law, it being for the recovery of damages for breach of an alleged contract. The procedure, however, by which the issue is to be determined calls for a suit in equity; but, so far as the right to recover is concerned, it must be judged as if in an action at law between two individuals not connected as partners.

3. It will be noticed at the outset that the amount of damages claimed is not mentioned. The complaint merely avers that Newport & Conley "have suffered large damages." Neither does the prayer of the complaint state the amount of the damages claimed. In mandatory language, Section 67, Or. L., prescribes that:

"The complaint shall contain,—

"1. The title of the cause, specifying the name of the court, and the names of the parties to the action, plaintiff and defendant;

"2. A plain and concise statement of the facts constituting the cause of action, without unnecessary repetition;

"3. A demand of the relief which the plaintiff claims. If the recovery of money or damages be demanded, the amount thereof shall be stated."

Measured by this standard the complaint is insufficient in that there is no statement of the amount which the plaintiff claims as damages. Presented as the question is by the record, we cannot evade nor disregard the direct command of the statute.

4. A more important objection is urged by the defendants to the effect that the contract declared upon is so vague and uncertain as to amount to no contract at all. The scheme as delineated in the paragraph of the complaint first above quoted was for the defendant firm to bid upon and endeavor to secure from the state a surfacing contract. Nothing is said about the terms of the contract to be bid upon, either in time of performance, the price to be paid, or the kind or specifications of the work to be performed. It was said also that Newport & Conley, by way of and under the form of a subcontract from the defendants to the defendant Conley and plaintiff, would do those things provided by the surfacing contract to be done by the contractor and would receive for their services the compensation to be awarded under the future contract to Porter & Conley from which a deduction of 10 per cent was to be paid Porter & Conley, together with the premium on their surety bond. It is manifest that all the terms of the primary surfacing contract were left to the discretion of Porter & Conley. That concern had power over the terms of the agreement outlined in the complaint so as to impose a burden as grievous as they chose upon Newport & Conley, without any discretion vested in the latter. There was no meeting of minds, because there was no existing subject matter upon which they could meet. It is very plain that there were two contracts in contemplation, one between the State of Oregon and Porter & Conley, to which Newport & Conley were not parties, and a second between Newport & Conley on one hand, and Porter & Conley on the other, in which the state had no part or concern. According to the allegation of the complaint the execution of these contracts

were both *in futuro*. If they had any validity at all, that quality attached the instant they were made. They were then binding or not at all. If they were not then efficacious there is nothing shown in the complaint imparting vital force to the proposed contract between Newport & Conley on the one hand and Porter & Conley on the other. It is stated that the surfacing contract between the state and Porter & Conley was executed, but it is not stated that the subcontract already mentioned was ever executed. It is a clear case of making an indefinite contract to enter into an equally indefinite future contract. The conclusion was reached in *Holtz* v. *Olds,* 84 Or. 567 (164 Pac. 583, 164 Pac. 1184), that such a convention was void and imposed no obligation upon either party.

5. A still more serious objection to this complaint is found in the fact that the scheme described in the complaint is an effort to prevent competition in the matter of bidding upon public works. In Section 4433 Or. L., as amended by the Act of February 26, 1921, page 591, Laws of 1921, it is required that:

" * * awards of contracts for the construction, improvement, repair or maintenance of said highways shall be made by said commission to the lowest and best responsible bidder upon the kind of material or materials selected by said commission."

6. It is not a case where two or more persons openly combined as joint adventurers to bid for the performance of public work. On the contrary, it is an instance where two concerns agree in effect that one shall bid and that the work shall be performed actually by the other at 10 per cent less than the contract price. The conduct of the parties, as described in the complaint, amounts to what is called "chilling the bids." That it is contrary to public policy and hence void thus to act is decided in *Rosen-*

*krantz* v. *Barde,* 107 Or. 338 (214 Pac. 893), and that any scheme which has the effect of depriving the public of the protection embodied in a statute requiring contracts to be let to the lowest responsible bidder is void is taught in *Montague-O'Reilly* v. *Town of Milwaukee,* 101 Or. 478 (193 Pac. 824, 199 Pac. 605). Although this point was not raised in argument in the briefs, we are justified in suggesting it and enforcing it by the doctrine of *Jackson* v. *Baker,* 48 Or. 155 (85 Pac. 512), where the court, speaking through Mr. Chief Justice ROBERT S. BEAN, laid down the rule thus:

"If the illegality appears from the complaint or the plaintiff's case, the court will, at any stage of the proceedings, dismiss the action, although such illegality is not pleaded as a defense, or insisted upon by the parties, and may have been expressly waived by them. It is an objection which the court itself is bound to raise in the due administration of justice, regardless of the wishes of the parties."

The result is that the decree of the Circuit Court must be reversed and the suit dismissed. ·

REVERSED AND DISMISSED.

RAND, J., being absent, did not participate in this decision.