IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

215    1
216    ¹193

215    1
## Hallock, Appellant, v. Lebanon.
218    ¹520
f219    ¹ 36

*Appeals—Assignments of error—Evidence—Nonsuit.*

An assignment of error to a ruling on evidence which contains no reference to the pages of the paper-book where the evidence may be found, violates rule 31.

An assignment of error to the rejection of writings which fails to contain copies of the writings rejected is insufficient.

No assignment of error lies to the entry of a nonsuit.

*Municipalities—Ordinances—Contracts—Act of May 23, 1889—Committee —Committee of the whole—Printing ordinance.*

An ordinance which passed first reading, and was then printed and was afterwards considered section by section by the city council, sitting as a committee of the whole, and thereafter passed second reading, is valid, and does not violate the act of May 23, 1889, which provides that "no bill shall be considered unless referred to a joint or separate committee returned therefrom and printed for the use of the members."

*Municipal contracts—Bonds—Ordinance.*

Where a municipal ordinance requires bonds to be given by contractors "in the amount of the contract price," but does not state when the bonds shall be given, and it appears that the first payment, under the contract, is not to become due until after the completion of the work, and then to be payable in installments, the requirements of the ordinance are met by giving a bond upon the completion of the work, conditioned according to the terms of the contract.

Argued Feb. 13, 1906. Appeal, No. 374, Jan. T., 1906, by plaintiff, from judgment of C. P. Lebanon Co., March T., 1900,

**2**        HALLOCK, Appellant, *v.* LEBANON.

No. 163, refusing to take off nonsuit in case of L. G. Hallock and James Kinney, Jr., trading as Hallock & Kinney, v. City of Lebanon. Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ. Reversed.

Assumpsit for work done and materials furnished under a contract. Before EHRGOOD, P. J.

The facts are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* among others was (9) refusal to take off nonsuit.

*George B. Woomer*, for appellant.—By the terms of this contract, the execution and delivery of the bond or bonds required by the specifications, was not a condition precedent to the validity of or vesting of rights under the contract, but a condition subsequent to performance and precedent to payment: Adrian Water Works v. City of Adrian, 64 Mich. 584 (31 N. W. Repr. 529).

That the parties to a contract acted upon a certain construction, is always evidence that such construction was the one intended by them: Pratt v. Campbell, 24 Pa. 184; New York Tartar Co. v. French, 154 Pa. 273; Huckestein v. Nunnery Hill Incline Plane Co., 173 Pa. 169.

The city is estopped under the circumstances to question the validity of the contract: Allegheny City v. McClurkan & Co., 14 Pa. 81; Hitchcock v. Galveston, 96 U. S. 341; Columbus Water Co. v. Mayor, etc., of Columbus, 15 L. R. A. 354; Moore v. City of New York, 73 N. Y. 238; Schumm v. Seymour, 24 N. J. Eq. 143; Devlan v. Wells, 65 N. J. Law, 213 (47 Atl. Repr. 467); Ford v. Dyer, 148 Mo. 528 (49 S. W. Repr. 1091).

*Eugene D. Siegrist*, city solicitor, for appellee.—Should the provisions of the ordinance and contract differ, the provisions of the ordinance control: Dime Deposit Bank v. Scranton, 4 Lacka. Jurist, 109; Philadelphia v. Jewell, 135 Pa. 329; Deysher v. Reading, 18 Pa. C. C. Rep. 611; Bladen v. Philadelphia, 60 Pa. 464; Parker v. Philadelphia, 92 Pa. 401.

There having been no valid ordinance upon which to base

the contract in suit, the contractors would have taken no rights from the alleged contract, even had it been properly executed: Milford Borough v. Water Co., 23 W. N. C. 413; Fuller v. Scranton, 18 W. N. C. 18.

Assuming that the ordinance of councils was valid, the contract was not executed in accordance with its mandatory provisions in that no bond was delivered as therein provided, and therefore the appellants cannot recover thereon: Philadelphia v. Stewart, 195 Pa. 309; Morris v. Paving Co., 7 North. 5; Mazet v. Pittsburg, 6 Pa. C. C. Rep. 599; Malone v. Philadelphia, 147 Pa. 416; Addis v. Pittsburg, 85 Pa. 379.

Opinion by Mr. Justice Potter, April 9, 1906:

In this case the plaintiffs sought to recover the cost of an auxiliary waterworks built by them under a contract with the city of Lebanon. Upon the trial the learned judge of the court below granted a motion for a compulsory nonsuit, and subsequently refused to take it off. His refusal was based upon two grounds: first, the ordinance authorizing the contract was invalid, in his view, because, as he held, it was passed in violation of the statute prescribing the mode in which ordinances shall be passed; and, second, because no bond had been given by the plaintiffs for the faithful performance of the contract.

The specific feature in which the statute was violated during the passage of the ordinance is not pointed out by the trial judge in his opinion. But apparently he considered that it consisted in a failure to print the ordinance at the proper time, for the use of the members of council.

The first, second, third, fourth, fifth, sixth and seventh assignments of error specify the rejection by the court of various offers of evidence made on behalf of plaintiffs. These assignments all violate rule 31 of this court in that they contain no reference to the pages of the paper-book where the matter may be found in its regular order in the printed evidence or notes of trial.

The first and second assignments of error do not contain copies of the writings rejected, but such copies are printed elsewhere in the paper-book.

The eighth assignment specifies as error, the entry of the nonsuit, but this is not properly assignable as error.

The ninth assignment, however, which specifies the refusal of the court to take off the compulsory nonsuit, is good and raises all the questions necessarily involved in this appeal.

It appears that when the appellants sought to offer in evidence in the court below, the ordinance of the city of Lebanon, approved on August 12, 1897, upon which the contract in suit was founded, the appellee objected on the ground that the ordinance was invalid, for the reason that, as he put it, the ordinance was considered by councils before being printed, as required by the Act of May 23, 1889, P. L. 277. This act provides that " No bill shall be considered unless referred to a joint or separate committee, returned therefrom and printed for the use of the members," etc.

It is argued that the ordinance is void because the bill was not printed before it was read the first time. The fact is, as appears from the evidence, that on July 7, 1897, at a meeting of the common council of Lebanon, convened for the transaction of general business, the bill was read in place by a member of the council, and passed first reading. Then two days later, on July 9, 1897, at a special meeting convened for the same purpose, the same bill was called up, and, on motion, council went into " committee of the whole " for the purpose of amending the bill. In the committee the bill was considered section by section, and certain amendments were made. After the committee had risen and reported the bill as amended to the council, their report was accepted, and the bill was referred to the printing committee for reprinting. Three days afterward, on July 12, 1897, at another special meeting convened for the same purpose, the bill was read and passed second reading, and then the rules being suspended, it was read a third time, and passed finally.

It appears from the use of the word " reprinting " in the minutes of the meeting of July 9, and from the testimony of the clerk of common council, that the bill was printed before the meeting of July 9, at which time it was considered section by section, and amended, although it apparently was not printed until after the meeting of July 7, when it was first introduced and passed first reading.

The contention that the ordinance cannot be valid unless it was printed before it was first introduced and read, is, we

think, unreasonable and unsound.   The requirement of the statute is, that it shall be printed before it is considered, and it is reasonable to presume that the consideration intended was something more than the mere listening to the reading of it. To "consider" is "to fix the mind upon, with a view to careful examination; to ponder; study; meditate upon; think or reflect with care."   It was in such sense as this we think that the word was used in the statute, and it ought to be a sufficient compliance to print the bill before it is taken up for serious deliberation or for discussion or amendment.   Under a fair construction of the wording of the law, the bill is to be offered, referred to a committee, returned therefrom, and then printed for the use of the members, before it can, in a proper sense, be considered.   Under ordinary legislative practice, a bill is not open to amendment and discussion until second reading.   If a similar usage be held applicable to the statute now under consideration, then its provision as to the printing of the bill was sufficiently observed in this case.

It is urged also that the ordinance is defective because during its passage, it was not referred to a committee.   But that depends upon what is considered a committee in legislative practice.   Ordinarily a committee is composed of a comparatively small number of members, but it may include the whole body.   In the Century Dictionary, "Committee of the whole" is defined as follows: "A committee of a legislative body consisting of all the members sitting in a deliberative rather than a legislative character, for formal consultation and preliminary consideration of matters awaiting legislative action."   The bill in this instance was referred to the "committee of the whole" at the meeting of July 9, and was carefully considered in that committee, section by section, and was amended and reported as amended to the council, who accepted the report and referred the bill to the printing committee for reprinting.   We think that this reference to the committee of the whole and its careful consideration there, met the requirements of the statute, as fully and fairly as a reference to any smaller committee, either special or standing, would have done.

But it is suggested by the trial judge in his opinion that, even if the ordinance was valid, its specifications with regard to the furnishing of a bond by the contractors were not com-

plied with.   The ordinance required bonds to be given by the contractors " in the amount of the contract price "; but it did not specify the time when this security should be given.   The bonds were to be conditioned for the faithful performance of the contract, and the fulfillment of each and every one of the elements of the guaranty.   The contract, as recited in the ordinance, was to be for the furnishing of a guaranteed additional supply of pure soft water, and was to include all necessary machinery and appliances for a complete system.   The guaranty was to be for the supply of 1,000,000 gallons of pure soft water daily for a period of five years.   The first payment, under the contract, was not to become due until after the completion of the work.   The requirements of the ordinance would seem to be fully met by giving a bond or bonds upon the completion of the work, conditioned for furnishing the water supply according to the contract, and fulfilling the guaranty during the stipulated term of five years.   The language used is certainly susceptible of this construction, and the representatives of the city seem to have so construed it when the contract was printed.   The contract price was to be paid " upon the delivery of a bond or bonds as required by the said specifications."   The specifications did not fix the time when the bonds were to be given, and provided only that they would be conditioned for the performance of the contract and the repayment of the contract price if the guaranty was not fully carried out. At the trial, plaintiffs offered to show that at the time of the execution of the contract, they tendered a bond, prepared in accordance with the specifications, to the mayor and city solicitor, who represented the city, and that it was refused by them for the reason that no bond was necessary until the payment of the first installment due under the contract.   Plaintiffs also offered to show performance of the contract on their part, and that councils, by undertaking to abrogate the contract without just cause, after the work had been completed and used by the city, waived the furnishing of a bond.   So long as the city retained the money in its own hands, it ran no appreciable risk. The contract price was to be paid in five equal installments, the first on the completion of the work, and the others in yearly installments thereafter.   In view of the annual payments provided for, and the use of the plural number in referring to the

security, the ordinance may be fairly construed as requiring that five bonds were to be given, each for the amount of the consideration payable yearly. As a matter of fact, the time limit covered by the guaranty has expired, and the permanency of the supply for the required period, is a matter that can be established by proof of the fact, so that the matter of bonds to secure the city in that respect has become merely a moot question.

It appears further that an appropriation was made by the city sufficient to cover the amount of the first payment, and the city controller appended his certificate, as required by the statute. The appropriation was sufficient when it covered the first payment. The rule was laid down by Chief Justice Mc-Collum in Black v. City of Chester, 175 Pa. 101 (105) that, " If the contract is to furnish light or water for a term of years to be paid for monthly, quarterly or annually, he (the controller) should certify upon it the estimated amount of expenditure thereunder for the ensuing fiscal year." The controller did so certify in the present instance.

As the case now stands, the plaintiffs seek to recover for the full amount of the contract, as damages, and if they succeed in making good their claim, it is possible that a large sum may be recovered against the city without an appropriation having been made for the full amount thereof. But such a consideration cannot be controlling, if the result would be to enable the municipality to escape its honest obligations, under a valid contract. Even a constitutional requirement cannot be allowed to have such an effect as that. In Addyston Pipe & Steel Co. v. City of Corry, 197 Pa. 41, it was held that where a municipal contract for a sewer provided that the price should be paid partly by money in the treasury and partly by assessments on abutting and nonabutting property, and the nonabutting property was held not to be liable to such assessments, the city was liable for the full amount of the contract, notwithstanding the fact that this liability increased its debt beyond the constitutional limitation. The present chief justice said (p. 49) : " The constitutional restriction was not intended to make municipalities dishonest, nor to prevent those who contract with them from collecting their just claims, but to check rash expenditure on credit, and to prevent loading the future with the results of present inconsiderate extravagance."

In the case before us, the city council made a contract which was within the scope of its power, and under it the plaintiffs furnished materials and performed work, and, as they allege, completed the contract, and fulfilled the guaranty as to the permanency of the water supply. The truth of these allegations was a matter of proof, and the plaintiffs were entitled to a hearing upon the merits of their claim. Under the pleadings, plaintiffs averred performance on their part, acceptance by the city, and subsequent breach of the contract by it. Holding as we do, that the contract was valid under the ordinance, no question of ratification or waiver arises, and the authorities cited on these points need not be considered. If the plaintiffs performed the contract, and carried out all its specifications and made good the guaranty, they are entitled to recover and it would be rank injustice to hold that payment need not be made by the city. The ninth assignment of error is sustained and the judgment is reversed with a procedendo.