Argued March 21, affirmed May 1, 1923.

## WHITE *v*. CITY OF SEASIDE.

(213 Pac. 892.)

**Municipal Corporations—No Recovery for Work for City Where Contract was Invalid.**

1. Under a city charter requiring that the city should not be bound by any contract or in any way liable thereon unless it was authorized by ordinance or resolution, and made in writing and signed by the auditor and police judge, where upon the refusal of the auditor and police judge to sign a contract with an architect for planning and supervising construction of a building the city council passed a resolution dispensing with the necessity of his signature, and authorizing the mayor to sign it, the contract so made was invalid, and no recovery by the architect can be had on it, or on a *quantum meruit* for the work done; the provisions of the city charter being mandatory.

Mandamus—Municipal Corporations—Auditor Refusing to Sign City
Contract may be Compelled by Mandamus or Removed from
Office.

2. Where a city charter required contracts by the city to be
signed by the auditor and police judge, if the auditor refused to
sign, he could be compelled by *mandamus* to do so if the contract
was properly authorized, or a proceeding could be had to remove
him from office and replace him with someone who would obey the
direction of the council.

Municipal Corporations—Method of Executing Contract Pointed Out
by Charter is Measure of the Power.

3. Where a municipal charter points out a particular method in
which a contract is to be executed, the method so prescribed is the
measure of the power.

From Clatsop: JAMES A. EAKIN, Judge.

Department 2.

On the twenty-seventh day of March, 1920, plaintiff
filed his complaint in this cause, which is as follows:

"I.

"That at all times herein mentioned, the plaintiff
was, and still is, an architect by profession and en-
gaged in business as such architect.

"II.

"That at all the said times the defendant was, and
still is, a municipal corporation in the County of
Clatsop, State of Oregon, created and existing under
and by virtue of the constitution and laws of the State
of Oregon and a charter adopted by the legal voters
of said city at a special election held on the 28th day
of Feb., 1912, and amendments thereto, and at all
said times defendant was, and still is, exercising
its authority and powers by and through a mayor
and common council, and did, and still does, perform
the functions usually exercised by municipal corpora-
tions of its kind, and was, and still is, engaged in
public business as such municipal corporation.

"III.

"That on the 25th day of June, 1917, the defend-
ant filed with the Librarian of the Supreme Court of
the State of Oregon a duly certified copy of said
charter and all amendments thereto, and subsequently
filed with said Librarian duly certified copies of all
subsequent amendments of the same.

"IV.

"That on and between the 15th day of November and the 1st day of December, 1913, the defendant was contemplating the erection of a municipal building within the corporate limits of defendant and for the use and public business of defendant and the community embraced by its corporation; and on and between the dates last mentioned, the plaintiff as such architect, at the special instance and request of defendant, designed said building and made and delivered to the defendant the drawings, plans, elevations and sections and full specifications covering materials and workmanship required for the erection and completion of said buildings and blue-prints and copies of specifications therefor, all of the reasonable value of $811.30, no part of which has been paid, and the defendant made use of the same in the construction of its municipal building.

"That by Subdivision 24 of Section 9 of said Charter, said Common Council is granted power 'to erect and maintain a city hall' and other buildings."

The defendant answered, denying every allegation excepting that it admitted that the council had the power to erect a city hall and other buildings and further pleaded a former adjudication in this case, setting forth the proceedings in the former case in full, by which it appeared that plaintiff had brought an action upon an alleged contract in writing, which contract is as follows:

"This Article of Agreement, made by and between the City of Seaside, known herein as the party of the first part, acting by its Mayor and Auditor and Police Judge, and F. Manson White, known herein as the party of the second part,

"Witnesseth: That, Whereas by the terms of a resolution adopted by the Common Council of the City of Seaside on the 20th day of November, 1913, the said party of the second part was retained and empowered as an architect to prepare plans and specifications for a new city hall building that the

said party of the second part proposes to erect on Lots sixteen (16) and seventeen (17) of Block one (1) in the first addition to Ocean Grove in the City of Seaside, Oregon; and to superintend the construction of such building, all strictly under the terms and conditions and limitations as expressly set forth within said resolution;

"Now Therefore, It is expressly understood and agreed by and between said parties that such resolution shall be deemed as a component part of this contract, and the said party of the second part agrees that he shall be bound by the terms and conditions, and the expressed limitations in said resolution contained; and agrees to prepare in a first-class and workmanlike manner architectural drawings, and the like, and proper and satisfactory plans and specifications for such proposed city hall building, and to do all of such work without any unnecessary delay, and also agrees and binds himself to actively, constantly and thoroughly superintend the construction of such building, if the same be constructed; for which all of said services the said party of the second part shall be paid as follows:

"For all of such drawings, blue-prints, plans and specifications, and all other necessary preparatory work, a commission of three and one-half per cent upon the accepted cost price of said building; and an additional commission of one and one-half per cent for his services in constantly superintending the construction of said building until the same be finally completed; thus making a total payment unto him of five per cent upon the contract price.

"Always provided, that if, for any reason, the said party of the second part refuses, fails or neglects, or if in any manner by his own volition or act becomes unable or incompetent to superintend such work as aforesaid, then in that event he shall be paid merely 3 per cent for all of said drawings, plans, specifications and the like, which shall be in full and entire payment for all services rendered by him, including his work in superintending the construction of said building.

"The party of the first part agrees to pay unto the party of the second part the sum of 3 per cent within a reasonable time after the opening of bids for the construction of the building; and in the event that the remaining two per cent becomes due, to pay the same upon the completion of said work.

"Said party of the second part also agrees to watch the City's interests throughout, to make all proper contracts, and specifically to see that the laws of the State of Oregon in regard to such matters for the protection of the city be carried out, and that specifically any and all contracts shall be made in compliance with Chapter I of the laws of the State of Oregon of the year 1913, and as also contained in Chapter 61 on page 90 of the laws of 1913 of the State of Oregon, to the end that no liens or other encumbrances may be filed against said building.

"In Witness Whereof, the said parties have hereunto set their hands, and the seal of the city being hereby affixed by the City Auditor this —— day of November, 1913.

"ALEX GILBERT,

"Mayor.

"————————,

"City Auditor.

"F. MANSON WHITE."

"Witness to the execution hereof:

"C. S. SIMPSON.

"CHAS. M. PRECEMEDER."

The defendant further set forth that the defendant had answered in the former action and had denied the validity of the contract and the authority of the city council to make it and upon a reply having been filed and a trial upon the merits being had the court had made the following findings:

"IV.

"That the said F. Manson White, working under said contract, prepared plans and specifications for a City Hall to be erected in the City of Seaside.

## "V.

"That under the terms of said contract the said plaintiff herein was to be paid for his services on a commission of three and one-half per cent upon the accepted cost price of said building and the additional commission of one and one-half per cent for his services in constantly superintending the construction of said building until the same be finally completed. It was further agreed in said contract that the said plaintiff in this action was to be paid three per cent of the contract price within a reasonable time after the opening of bids for the construction of a building and in the event that the remaining two per cent becomes due to pay the same upon the completion of said work. The Court finds that there is no evidence showing that any bids were ever received and opened by the defendant, City of Seaside. That there is nothing in the evidence upon which the court can estimate the amount, if any, due plaintiff for services performed. That the failure to receive and open bids as set forth in said contract was without fault on the part of the defendant.

## "VI.

"The court further finds that the plaintiff herein prepared plans and specifications for a city hall building in the city of Seaside, but there being no evidence as hereinbefore stated, showing that bids were received and opened by the city of Seaside, upon which the court can base an estimate of the amount due plaintiff for said services.

"The court therefore finds as conclusions of law that the defendant is entitled to a dismissal of said complaint and a judgment against the plaintiff for its costs and disbursements expended in this action.

"Now, therefore, on the motion of the above-named defendant that the above-entitled action be dismissed, and that the above-named defendant, city of Seaside, have and recover from the plaintiff its costs and disbursements herein taxed at Fifty-one and 20/100 ($51.20) Dollars, and that execution issue therefor."

A judgment dismissing the case followed the findings. The judgment in the former action was never appealed from nor was any reply filed to the defendant's answer in the present case. The defendant moved for judgment on the pleadings, which was granted by the court, and from that motion the plaintiff appeals.                    AFFIRMED.

For appellant there was a brief and oral argument by *Mr. William A. Williams.*

For respondent there was a brief and oral argument by *Mr. William Miller,* City Attorney.

McBRIDE, C. J.—1. It sufficiently appears from the pleadings that the charter of the City of Seaside which was in force at the time of this alleged contract contains, among other things, the following provision:

"The city of Seaside is not bound by any contract or in any way liable thereon, unless the same is authorized by city ordinance or resolution, and made in writing by order of the common council, signed by the auditor and police judge on behalf of the city; except that this section shall not apply to the board of water commissioners hereinafter provided for."

2. It also appears that the auditor and police judge declined to sign the contract and that the council passed a resolution dispensing with his signature and authorizing the mayor to sign. We know of no law that authorizes a city council to dispense with a provision of a municipal charter, any more than a legislature can pass a resolution to dispense with some provision of the constitution of a state. If the auditor refused to sign the contract there certainly remained a remedy by *mandamus* to compel him to do so if the contract was properly authorized, or a

proceeding to remove him from office and replace him with someone who would obey the direction of the council.

3. Be that as it may, we are met at the very threshold of this case with the fact that no contract such as the charter authorized was ever in fact executed, and that the plaintiff must have been aware of this when he performed the labor; and if he chose to enter upon the performance of this work in pursuance of a contract void upon its face he did so at his peril. The plaintiff's first action was directly upon this contract. He now sues upon *quantum meruit*, which involves an implied contract to pay him the reasonable value of his services. The pleadings show that he had no enforceable contract, either express or implied. In numerous cases in this court it had been held that where a municipal charter points out a particular method in which a contract is to be executed the method so prescribed is the measure of the power: *Montague-O'Reilly* v. *Milwaukie*, 101 Or. 478 (193 Pac. 824, 199 Pac. 605); *Twohy Bros. Co.* v. *Ochoco Irr. Dist.*, June 12, 1923 (210 Pac. 873).

This provision of the charter is mandatory. The language of the charter is that the city "shall not be bound by any contract or in any way liable thereon * * ," and we but affirm that provision when we hold that plaintiff cannot recover in this form of action, or in any other form of action.

This view of the case renders a discussion of the other matters urged by counsel unnecessary, and the judgment of the Circuit Court is affirmed.

BEAN, J., concurs in the result.

BROWN and RAND, JJ., concur.                AFFIRMED.