Argued September 21; affirmed October 10; rehearing denied
December 5, 1933

# J. H. TILLMAN CO. *v.* CITY OF SEASIDE

(25 P. (2d) 917)

*G. C. Fulton,* of Astoria (G. C. & A. C. Fulton, of Astoria, on the brief), for appellant.

*Dean H. Dickinson,* of Portland (H. B. Dickinson and H. A. Webster, both of Portland, and Hesse & Franciscovich, of Astoria, on the brief), for respondent.

BAILEY, J. This an action instituted by the J. H. Tillman Company, a corporation, against the city of Seaside, to recover damages alleged to have been sustained by the non-payment of warrants issued by the city upon special funds to be raised by the levy and collection of assessments upon the property benefited by the improvement of certain streets in that city.

Before the trial of the case the parties stipulated that the facts and the law in each of the twenty-five separate causes of action were substantially the same; that there should be tried before the court, without the intervention of a jury, the fourteenth cause of action contained in the second amended complaint, hereinafter referred to as the complaint, and that if the judgment should be for the plaintiff on the fourteenth cause of action, there should also be entered in favor of the plaintiff and against the defendant like judgments in the remaining causes of action.

The fourteenth cause of action alleges the corporate character of the plaintiff and of the defendant; that the council of the city of Seaside was empowered to lay sewers and improve streets and to defray the cost of such improvements by assessments against the property benefited thereby; that pursuant to said authority the council on March 7, 1922, passed an ordinance of determination to improve a part of First avenue in Seaside and provided that the total cost of such improvement should be paid by special assessments against the property benefited thereby; that thereafter by resolution the council directed the mayor and the auditor of said city to enter into a contract with plaintiff for making the improvement; and that pursuant to said resolution such a contract was duly made and entered into by the plaintiff and the defendant.

It is further alleged that the plaintiff duly constructed and completed the improvements and performed all the conditions of the contract on its part; that said work was duly accepted by ordinance of the city of Seaside; that pursuant to various resolutions of the council, certain warrants amounting to $7,740.14 were issued by the defendant to the plaintiff, between and including June 9, 1922, and November 22 of the same year; that no part of these warrants has been paid; and that on November 28, 1922, plaintiff duly presented the warrants to the treasurer of the city of Seaside and demanded payment thereof, which was refused for want of funds.

Plaintiff avers that the charter of the city of Seaside specifies that no part of the cost of street improvements shall be paid from the general funds of the city, but that the entire cost thereof shall be de-

frayed from special funds therefor provided by the city by special assessments which the charter requires the city to levy and collect for that purpose against the property benefited by the improvement. In July, 1922, according to the complaint, the city found and declared the total cost of the improvement of First avenue to be $9,120.94, and appointed assessors to apportion and assess the same against the property, which was done, and assessments were levied in the manner prescribed by the charter, against the property so benefited.

The complaint further alleges that there had been paid to the city of Seaside from and on account of the unbonded part of said assessment approximately $5,-531.35, which it was the duty of the defendant to deposit in a special fund and apply to the cost of said improvement, including plaintiff's warrants; that the defendant had failed to create such special fund and had not applied all of said collected assessments toward the cost of said improvement but had diverted and appropriated to other purposes a large part thereof, to wit: $4,150.55; and that approximately $3,589.55 of said unbonded assessments remained unpaid, which the defendant had not collected and had not made, and was not then making, any attempt to collect. It is further charged that by reason of the neglect of duty on the part of defendant, in failing to create such special fund, in failing to enforce collection of street assessments, and in failing to apply money received by it from such assessments to the cost of said improvement, and by reason of the misappropriation of said special fund, the plaintiff is damaged in the sum of $7,740.14, with interest thereon from November 28, 1922, at six per cent per annum.

■ All the outstanding warrants issued for the improvement referred to in the fourteenth cause of action were, at the time of the trial, owned by the plaintiff, and it was admitted by counsel for the defendant that the city of Seaside had never notified the plaintiff to present these warrants for payment and that no attempt to collect any of the unpaid assessments had been made by the city.

"In this state it is now the settled law that where the expense of improving a city street is to be paid from a special fund, created by assessment on abutting property, a failure of the municipality to comply with any of the requirements of the charter essential to supplying such fund, or an unreasonable delay in enforcing such provision, or collecting and paying over the money, gives the contractor a right of action *ex delicto* against the corporation for damages, in which he is entitled to recover the amount due under the contract with interest, notwithstanding a provision therein that he shall look for payment only to the special fund, and will not require the municipality by any legal process, or otherwise, to pay the same out of any other fund": O'Neil v. Portland, 59 Or. 84 (113 P. 655).

See also: *Northern Pacific Lumber Co. v. East Portland,* 14 Or. 3 (12 P. 4); *Portland L. & M. Co. v. East Portland,* 18 Or. 21 (22 P. 536, 6 L. R. A. 290); *Commercial National Bank v. Portland,* 24 Or. 188 (33 P. 532, 41 Am. St. Rep. 854); *Little v. City of Portland,* 26 Or. 235 (37 P. 911); *Jones v. City of Portland,* 35 Or. 512 (58 P. 657); *Dennis v. City of McMinnville,* 128 Or. 101 (269 P. 221).

The appellant in this case, while acknowledging the foregoing as being the settled law in this state, contends that since this is an action *ex delicto* it is barred by the statute of limitations, section 1-206, Oregon

Code 1930, which requires actions *ex delicto* to be brought within two years. In support of this contention it is stated by counsel for the appellant that it is also the settled law in this state that when a municipality with charter provisions such as those of Seaside fails or neglects for a period of six months after the completion of a public improvement to employ the necessary measures to collect therefor or fails to collect the special assessments levied to defray the costs of said improvement and pay the same to the contractor on demand, the municipality immediately becomes liable to the contractor for the face value of the special fund warrants; and that the cause of action in this case accrued to the plaintiff within six months from the completion of the contract. It is then pointed out that more than six years have elapsed with respect to all the twenty-five causes of action except one, after the accrual of the right of action in favor of the plaintiff, and before the institution of this action.

The city of Seaside does not occupy a position analogous to that of an ordinary debtor or tort-feasor. When the plaintiff in this action completed its contract, it then became the duty of the city as trustee for plaintiff to set the machinery in motion to provide the special fund out of which plaintiff's warrants were to be paid. There was no privity of contract between plaintiff and the property owners, and when the plaintiff completed its contract it had done all that was required of it: *O'Neil v. City of Portland*, supra.

In *New Orleans v. Warner*, 175 U. S. 120 (20 S. Ct. 44, 44 L. Ed. 96), suit was brought by parties holding obligations against the city of New Orleans to charge that city with the payment of certain warrants issued

for the purchase of a drainage plant and franchise. A liability on the part of the city was alleged as due to the violation of duties imposed upon it by statute. As a defense the city pleaded the statute of limitations, and in answer thereto the court observed:

"As the city had paid for the property in warrants drawn upon a particular fund, it was under an implied obligation to do whatever was reasonable and fair to make that fund good. Certainly it could not so act as to prevent the fund being made good, and then require the vendor to look to the fund and not to itself. The duty of the city to collect these assessments was affirmed in State ex rel. Van Norden v. The Mayor, etc., 27 La. Ann. 497. See also Cumming v. The Mayor, 11 Paige 596; Atchison v. Byrnes, 22 Kans. 65.

"Having thus voluntarily assumed the obligations of a trustee with respect to this fund, it can not now set up the statute of limitations against an obligation, which, as such trustee, it had undertaken and failed to perform. The rule is well settled that in actions by *cestuis qui trust* against an express trustee, the statute of limitations has no application, and no length of time is a bar. While that relation continues, and until a distinct repudiation of the trust by the trustee, the possession of one is the possession of the other, and there is no adverse relation between them. Perry, Trusts, § 863. In Oliver v. Piatt, 3 How. 333, 411, it is said that 'the mere lapse of time constitutes of itself no bar to the enforcement of a subsisting trust; and time begins to run against a trust only from the time when it is openly disavowed by the trustee, who insists upon an adverse right and interest, which is fully and unequivocally made known to the *cestui que trust*'. To set the statute in motion the relation of the parties must be hostile, and so long as their interests are common, or their relations fiduciary, as in the case of landlord and tenant, guardian and ward, vendor and vendee, tenants in common, or trustee and *cestuis qui trust,* the statute does not begin to run."

In *Barnes v. Turner*, 14 Okl. 287 (78 P. 108, 10 L. R. A. (N. S.) 478, 2 Ann. Cas. 391), plaintiff instituted a proceeding in mandamus to compel the councilmen of the city of Guthrie, Oklahoma, to levy a tax upon a designated part of that city, to provide for the payment of certain warrants. One of the defenses to this action was that it was barred by the statute of limitations. In referring to this matter, the opinion there said:

"The issuing of these warrants, making them payable out of a certain fund to be raised by a certain levy, indicates that a duty devolved upon the officers of the city to make the necessary orders and take the necessary steps which are prerequisite to the levying and collecting of that tax. Now can the officers of the city, when steps are taken which are necessary preliminaries to the collection of these warrants, be heard to take advantage of their own neglect of duty, by saying that because we have not performed the duty as the law required of us and made the necessary levy to provide the fund for the payment of these warrants, that consequently, on account of our neglect, the statute of limitations has run against the holders of these warrants so as to prevent their collection?"

After stating that the case came clearly within the decision of that court in a former instance and after calling attention to other authorities to the effect that the statute of limitations would not apply to cases of that kind, the court held:

"From the foregoing it will be seen that the reason assigned by the courts in refusing to permit the statute of limitations to be pleaded as a bar to recovery, in cases of this character, arises out of the fact that the defendants were, under the law, required to do some affirmative act; that is, to levy a tax creating a fund for the payment of indebtedness and the taking up of warrants, and if the warrant holder failed to present his warrant and secure the money thereon, the statute

of limitations could be successfully interposed. But so long as there remained, under the law, some act to be performed by the municipality, such municipality has not performed its duty under the law, and the courts will not and ought not to permit them to interpose their failure to act as by law required as a defense to the payment of a just obligation.''

In the case of *Rogers v. City of Omaha,* 82 Neb. 118 (117 N. W. 119), action was brought against the city of Omaha by the holder of certain special fund warrants, and although it is not definitely stated therein that the action was *ex delicto,* it is apparent from what the court said that the proceeding was of that nature. The court there observed:

''The law is well settled that when a municipal corporation enters into a contract of this character it thereby agrees to create the special fund, by valid assessments, and that, failing so to do, it is liable generally. It will not do to say that a city may contract for the expenditure of large sums of money and material and a large amount of labor in constructing valuable improvements for the city, and agree to pay for such improvements out of a fund to be created by a special assessment, and then escape all liability by never creating the fund, or if it attempts to create such a fund, by proceeding so irregularly that the assessments when levied can not be enforced. No such dishonesty would be tolerated in an individual, and we see no reason why it should be in the case of a municipal corporation. As said by the supreme court of California, in Pimental v. City of San Francisco, 21 Cal. 352, 363: 'The city is not exempted from the common obligation to do justice, which binds individuals. Such obligation rests upon all persons, whether natural or artificial. If the city can obtain the money of another by mistake, or without authority of law, it is her duty to refund it, from this general obligation. If she obtain other property, which does

not belong to her, it is her duty to restore it, or, if used, to render an equivalent therefor, from the like obligation.   *   *   *   The legal liability springs from the moral duty to make restitution. And we do not appreciate the morality which denies in such cases any rights to the individual whose money or property has been thus appropriated.   The law countenances no such wretched ethics; its command always is to do justice'.''

Following a review of numerous decisions on the duty of the city to provide a special fund with which to pay the warrants, and after disposing of the contention that appellant should have proceeded by mandamus, the court refers to the defense that the action was barred by the statute of limitations as follows:

''It will be seen from this that we have not decided the question as to when the statute of limitations begins to run in a case of this character. All that we have decided in the cases referred to is that, under the facts appearing in each of those cases, the statute had not run against plaintiff's cause of action. A careful consideration of this question leads us to the conclusion that the statute of limitations does not commence to run against warrants issued by a municipal corporation, payable out of a special fund to be created, until such fund has in fact been created, and there is sufficient money in the fund with which to pay the warrants. Robertson v. Blaine County, 90 Fed. 63, 32 C. C. A. 512, 47 L. R. A. 459; Wetmore v. Monona Co., 73 Iowa 88, 34 N. W. 751; Board of Commissioners v. Clarke & Courts, 12 Okl. 197, 70 P. 206; Hubbell v. City of So. Hutchinson, 64 Kan. 645, 68 P. 52; Barnes v. Turner, 14 Okl. 284, 78 P. 108, 10 L. R. A. (N. S.) 478; Potter v. City of New Whatcom, 20 Wash. 589, 56 P. 394, 72 Am. St. Rep. 135. In the light of these authorities, defendant's plea of the statute of limitations must fail.''

In *Berkey v. Board of Commissioners,* 48 Colo. 104 (110 P. 197, 20 Ann. Cas. 1109), a mandamus proceed-

ing was instituted against the board of county commissioners to require that body to levy a tax to pay certain obligations of the county. In referring to the contention that the proceeding was barred by the statute of limitations, the court said:

"Does the three-year limitation statute bar the action of mandamus? We think not. This statute does not bar the bonds, either as to principal or interest. Mandamus is, as we have already seen, the only remedy to compel payment. It logically follows then that this statute does not bar the remedy. To say otherwise would in effect permit that to be accomplished indirectly which may not be done directly. The limitation applicable to the bonds is applicable to the remedy. The statute not having run against the claim itself, the exclusive remedy by which it may be enforced ought not to be barred.  *  *  *

"If fault is to be charged to any one it must be against the board, because of its failure to make provision, as commanded by statute, for the payment of this indebtedness. What moneys the county may have collected in the past for this purpose have admittedly been diverted to other sources. For all of these years it has enjoyed the use thereof, and has derived the profits, benefits, and advantages accruing therefrom. It is no hardship that it be now required to pay plaintiff, according to the very terms of, and in the manner provided by, the bonds themselves."

■ In the case at bar the statute of limitations had not run against the warrants, as they were payable out of a special fund and the money had not yet been provided by the city of Seaside with which to pay them. Since the payment of these warrants was not barred by the statute of limitations, it would naturally follow that the statute would not bar the remedy. It was a continuing duty on the part of officials of the city of Seaside to provide the funds with which to pay these

warrants. At no time, according to the record in this case, did those officials question the validity of the warrants or repudiate the compulsory trust imposed upon them by the charter of that city.

See, in further reference to the operation of the statute of limitations, the following: *Freehill v. Chamberlain*, 65 Cal. 603 (4 P. 646); *City of Sulphur v. State*, 62 Okl. 312 (162 P. 744); 37 C. J., § 158, p. 813, and § 209, p. 849; 17 R. C. L., § 128, p. 763.

Based on the following reasoning, we conclude that this action was not barred by the statute of limitations.

Section 59 of the charter of the city of Seaside some time prior to, and ever since, the making of the various contracts between the plaintiff and the defendant, provided, among other things, as follows:

"The council shall provide for taking surety by bond, for the faithful performance of any contract let under its authority and for all sewers or street improvement except wooden sidewalks, the council shall, by ordinance, provide that the contractor give a bond in a sum equal to 25 per cent of the contract, conditioned that he will keep the said sewer, or other improvement, in good repair for a period of two years from the date of the completion and acceptance of the work. And the provisions of said bond may be enforced by an action in the name of the city."

No maintenance bond as provided in the above section was given by the plaintiff, and the appellant contends that the several contracts entered into between itself and the plaintiff for the improvement of various streets in the city of Seaside were, by reason thereof, wholly void and unenforceable, and in support of that contention cites the following cases and texts: *White v. City of Seaside*, 107 Or. 330 (213 P. 892); *Montague-O'Reilly Co. v. Town of Milwaukie*, 101 Or. 478 (193

P. 824, 199 P. 605); *Twohy Bros. Co. v. Ochoco Irriga-
tion District et al.,* 108 Or. 1 (210 P. 873, 216 P. 189);
*McBean v. City of San Bernardino,* 96 Cal. 183 (31 P.
49); *Mackey v. Columbus Township,* 71 Mich. 227 (38
N. W. 899); *Milford v. Milford Water Co.,* 124 Pa. 610
(17 Atl. 185, 3 L. R. A. 122); 1 Cooley's Constitutional
Limitations, (8th Ed.), pp. 440 et seq.; 3 McQuillin
on Municipal Corporations, (2d Ed.), § 1181.

The authorities last above cited, however, are not
in point here, as they involve different charter or
statutory provisions. For instance, in *White v. Sea-
side,* supra, the charter provided that the city should
not be bound by any contract or in any way become
liable thereon unless the same was authorized by city
ordinance or resolution, made in writing by order of
the common council and signed by the auditor and
police judge on behalf of the city. In that case the
auditor-police judge declined to sign the contract and
the council passed a resolution attempting to dispense
with his signature and authorizing the mayor to sign.
This court held that the city council could not dis-
pense with that requirement of the charter and that
the plaintiff could not recover on *quantum meruit,* de-
claring the provision of the charter mandatory to the
effect that the city should not be bound by any con-
tract or in any way become liable thereon, unless the
same was in the form provided and signed as required
by the charter.

In *Montague-O'Reilly Co. v. Town of Milwaukie,*
supra, the municipality required each bidder to furnish
his own specifications for the work on which bids had
been invited. This court held that there had not been
a compliance with the charter provision as to compet-
itive bidding.

In *Twohy Bros. Co. v. Ochoco Irrigation District et al.,* supra, this court held that a contract entered into by the district without advertising for bids was invalid.

*McBean v. City of San Bernardino,* supra, involved a question of pleading. In *Mackey v. Columbus Township,* supra, no bond was given for the completion of the work and the public improvement was never accepted. In *Milford v. Milford Water Co.,* supra, the majority of the councilmen were directors of the public utility there involved, and for that reason the court held that the contract in question was void.

In 3 McQuillin on Municipal Corporations (2d Ed.) § 1181, it is stated that the question of invalidity of the contract "has arisen in many cases, but the great majority of the cases fall within the following classes: (1) contract not let on competitive bidding or to the lowest bidder as required by statute or charter; (2) contract not made by ordinance or resolution as required by statute or charter; (3) contract not in writing as required by statute or charter".

The charter here under consideration does not provide when the maintenance bond shall be given. Nor does it require the taking of such bond before letting the contract. In *Berry v. City of Drumright,* 110 Okl. 223 (237 P. 102), suit was brought to prevent the passage by the city of a resolution for the issuance of paving bonds and to prevent city officials from executing a contract between the city and the contractor for paving streets, on the ground that the five-year maintenance bond had not been executed prior to the awarding of the contract. After holding that in the absence of statutory or other legal requirement, the time when the maintenance bond should be executed

was within the discretion of the city authorities, the appellate court amplified its conclusion as follows:

"The bond requiring payment by the contractor for all materials and labor is sometimes required by statute. Our statute is not thus, but the resolution of the city so provided in the instant case. 4 McQuillin on Municipal Corporations, § 1959, is to the effect that, unless the statute is mandatory, such bond may be taken before or after the contract is made. We think the same rule would apply to the taking of a maintenance bond. There are practical reasons why this should be so. The statute requires such maintenance bond to run from the time of the completion of the work. Until the time of such completion is known, its terms could not be fixed. Again, the city may reject the work as not done in accordance with the contract, in which event the contractor would not receive compensation, or all thereof. If the work be not accepted and paid for, there would be no duty of the contractor to maintain. We take it that the statute contemplates that the city should require such maintenance bond when the work is completed, or the time of completion is known, and prior to the payment to the contractor of sufficient of the price to protect the city. In this, as in many other matters, the protection of the property owners is dependent upon the honesty, good faith, and diligence of public servants. The failure of the city to require and of the contractor to give such maintenance bond before the awarding of the contract is no ground for injunctive relief."

See also, in this connection, *Hallock v. City of Lebanon*, 215 Pa. 1 (64 Atl. 362).

Here the contract was executed pursuant to a regularly adopted ordinance of the city of Seaside. It was in writing and signed by the duly authorized officers of that city, and there is no issue raised by the pleadings, or evidence offered, that the contract was not let to the lowest bidder, or that there was no competitive

bidding, due to some alleged defect in the proceedings. Nor is any contention made that the city has been damaged in any manner by the failure of the city council to require, and the neglect of the contractor to give, a maintenance bond.

■ The validity of the contract between the plaintiff and the defendant for the improvement of First avenue was in no way affected by the failure of the plaintiff to give the maintenance bond, as this bond could have been given at any time after the contract was entered into between the city and the contractor. The failure to give this bond might have prevented the plaintiff from maintaining this action or any other proceeding, within two years from the completion of the contract.

The city has, during said two years, been amply protected without such a bond, for the reason that it has, during said period, withheld from the plaintiff the greater part of the contract price. Had the failure of the city to collect the unpaid assessments and pay the outstanding warrants been due entirely or partly to the neglect of the contractor to furnish this bond, a different question might be presented. There is, however, no contention made here that the neglect of duty on the part of the city officials was in whole or in part due to any failure of the plaintiff to do everything that was required of it. The argument advanced by the defendant is that the city never provided by ordinance for the maintenance bond, and therefore the plaintiff should not be allowed to recover for the material furnished and labor performed in the improvement of First avenue. We fail to see any merit in this contention. Nor are we able to comprehend how the failure to give this bond prevented competitive bidding. Any one who considered submitting a bid

knew that the same was to be made subject to all provisions of the city charter applicable thereto, and that the city council could, by ordinance, require a maintenance bond.

The second amended complaint contained twenty-five causes of action, separately stated. Each cause of action related to only one improvement contract and referred to and described from one to twenty-four warrants issued by the city in part payment for the different improvements. A motion was made by the defendant to strike each of the twenty-five causes of action on the ground that each of said causes contained several causes of action not separately pleaded, to wit: a cause of action based on each individual warrant. Although this motion was directed to all twenty-five causes of action, only twenty of them included more than one warrant.

■ When the city entered into these several contracts it obligated itself in each instance to perform certain duties imposed on it by law, and its failure to perform those duties gave the plaintiff a right of action as to each contract: *Little v. Portland,* supra. The evidence relative to the fourteenth cause of action (and the other causes of action are controlled by this evidence) was to the effect that all the outstanding warrants for the improvement of First avenue were owned by the plaintiff; and we know of no rule of law, or any advantage which would result to the defendant, to require the plaintiff in an action of this nature to treat each warrant given in payment for the same improvement as a separate cause of action. The second amended complaint, already consisting of 192 printed pages in the abstract, would thereby be extended to cover approximately 1,100 pages, were defendant's request

granted. Had the plaintiff in the first instance divided its complaint into some 150 different causes of action, or instituted that many separate actions, defendant might well have had ground for complaint because of the added expense and trouble thereby imposed on it.

■ The second amended complaint asks judgment for the amount of the outstanding warrants owned by the plaintiff, together with interest thereon from the date when the same were presented to, and payment was refused by, the city; and the findings of the court were in accord with the prayer of that pleading. The defendant objects to the allowance of interest, and in support of its position asserts that this is an action *ex delicto* and the statute does not provide for interest in such cases. Under the provisions of the charter of the city of Seaside, the city is entitled to interest at the rate of 6 per cent per annum on these special assessments from the date or dates of the confirmation thereof by the city council; and in each instance the assessment was confirmed prior to the date of the presentation of the warrants. Plaintiff's action is for damages for failure of the city officials to perform their duty, and the damages suffered were not limited to the amount of the warrants but would include loss of interest thereon at the legal rate. Were the city to pay only the face of the warrants, it would then, upon the collection of the unpaid assessments and the interest due the city thereon, profit by its own failure to do its duty. This court has held, in *Jones v. Portland,* supra, *O'Neil v. Portland,* supra, and *Dennis v. City of McMinnville,* supra, that the plaintiff in an action of this nature is entitled to recover the amount of the warrants or whatsoever sum is due under the contract, with interest thereon.

■ At the trial the plaintiff offered no proof of certain preliminary steps leading up to the execution of the contract. It did, however, introduce in evidence the resolution awarding the contract to plaintiff and authorizing the execution thereof, the contract itself, the ordinance accepting the improvement and the ordinance authorizing the issuance of the warrants. It was not necessary for the plaintiff to prove each and every step in the proceedings, as the law presumes that official duty has been performed when the contract is executed: *Jones v. Portland,* supra; *O'Neil v. Portland,* supra. Had these preliminary steps not been taken, that fact would undoubtedly have been known to the officers of the defendant city and could have been set up in its defense to plaintiff's action.

■ The stipulation entered into by the parties prior to the trial of the case provided, among other things, that no judgment should be entered in favor of the plaintiff and against the defendant until there were filed with the clerk of the court the canceled special fund warrants described in each cause of action. The decree which was submitted to the defendant and not objected to by it provided that the clerk should retain in his possession the special fund warrants involved in this action which had been surrendered to him by the plaintiff, until the further order of the court. Defendant now complains that the warrants were not canceled prior to the entry of the judgment. This point, however, was not raised by the defendant at the time of the entry of the judgment, nor was any motion filed by it in the circuit court to have the judgment amended to conform to the stipulation. The defendant has not in any way been prejudiced by the failure to have these warrants canceled, as they are now in the control of

the circuit court, which can, if deemed advisable, require that they be canceled before the entry of the judgment on the mandate herein.

Several other assignments of error are urged, but they have to do, in large measure, with matters already discussed and with certain findings of fact made by the trial court and the failure of the court to make other findings in accordance with defendant's request. The facts in the case are undisputed and are sufficient to support the judgment. It may be that some of the findings contain some things which are not necessary, or matters about which there might be some dispute, or even conclusions of law. Nevertheless, they contain sufficient facts based upon undisputed evidence to support the judgment.

It is unnecessary to burden the reports with further consideration of these additional assignments of error relating to the findings of fact. The judgment appealed from ought to be affirmed, and it is so ordered.

RAND, C. J., CAMPBELL and KELLY, JJ., concur.